**Kathy and Gianna SHANDRA, Appellee**

v.

**Harry WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 11, 2002.
Filed Feb. 27, 2003.

---

Lawrence A. Durkin, Scranton, for appellant.

Joseph Yeager, Wilkes-Barre, for appellees.

Before: JOHNSON, KLEIN, and KELLY, JJ.

JOHNSON, J.

¶ 1 In this case, we determine whether a trial court can modify a pre-existing child custody order following a Protection From Abuse Hearing without granting the defendant leave to present evidence regarding the best interests of the child. Harry Williams appeals the trial court's order granting Kathy and Gianna Shandra's petition for Protection From Abuse and modifying the parties' pre-existing child custody order. Williams contends that the trial court's order denied him due process of law because he was not notified that his rights to visitation would be considered at the PFA Hearing; that the trial court used an erroneous standard to determine if he should be granted visitation and that the trial court should have allowed evidence concerning the best interests of the child to be presented at the PFA Hearing. Upon review, we hold that the trial court erred when it modified a pre-existing child custody order following a Protection From Abuse Hearing without permitting the parties to introduce evidence regarding the best interests of the child. Accordingly, we reverse that part of the order that

deprived Williams of his right to contact with his daughter.

¶ 2 This appeal arises from an order granting a petition for PFA. The record establishes the following facts and procedure. On November 14, 2001, Shandra filed a PFA petition on behalf of herself and her one-year-old daughter, Gianna, arising from an incident on November 10, 2001. The trial court, the Honorable Hugh F. Mundy, entered a Temporary PFA order on behalf of Shandra and Gianna. A full hearing was conducted on November 29, 2001. The testimony at the hearing demonstrated that on November 10, 2001, Shandra arrived at the Capital Pavilion, a federal halfway house in Harrisburg, Pennsylvania, to visit Williams, who was being housed there as a result of his conviction of federal drug charges. Shandra, accompanied by her parents, took her daughter along. Shandra's parents stayed for approximately an hour and then left the room. Thereafter, Shandra informed Williams that their relationship was over. At which point, Williams called Shandra a "cold-hearted bitch." Shandra testified that after she informed Williams that he would be permitted to see Gianna once a month, "he got very angry and [ ] started to come at me like he wanted to hit me and all he kept saying was, you don't know what I could do to you or what I am going to do to you." Thereafter, Shandra's parents walked into the room. At the hearing, Joseph Shandra, Shandra's father, corroborated her testimony. The testimony at the hearing also established that: Gianna was sitting on Shandra's lap during the incident, there were supervising officers in the room and video surveillance operating during the length of the visit, and the halfway house made no report of the incident and took no disciplinary action against Williams as a result of the incident. On cross-examination, Shandra testified that after the November 10th incident,

Williams called her home to inquire about Gianna's birthday party. During their conversation Williams stated, "I can't believe that you are going to make me do this to you." When Shandra asked what Williams was planning, he stated, "you'll see."

¶ 3 At the conclusion of the hearing the trial court, the Honorable Peter Paul Olszewski, Jr., issued an Order prohibiting Williams from hitting, assaulting, threatening, harassing, abusing or stalking Shandra and Gianna. The court also precluded Williams from having any contact with Shandra and Gianna, thereby modifying an existing visitation/custody order issued by the Honorable Chester B. Muroski. Subsequently, Williams filed this appeal raising the following questions for our determination:

1. Whether Appellant was denied due process of law when the court revoked Appellant's visitation without his being given any notice visitation was at issue?

2. Whether the lower court's standard that visitation to a prison inmate is a privilege which should be allowed only if the inmate is on his best behavior is incorrect as a matter of law?

3. Whether the Court should have used the legal standard of the best interest of the child in determining whether visitation to an inmate father should be terminated?

4. Whether the Court should have allowed evidence concerning the best interest of the child to be presented?

5. Whether the facts as found by the Court constitute abuse within the meaning of the PFA Statute (23 Pa.C.S.A. Sections 6100 et. seq.)?

6. Whether Appellee proved by a preponderance of the evidence that abuse under the PFA Statute (23 Pa.C.S.A.

Sections 6100 et. seq.) had occurred and a PFA Order should be issued?

Brief for Appellant at 16.

¶ 4 Before we address the merits of this appeal we must determine if this matter is properly before this Court. In the instant case, the period governed by the order ended on November 29, 2002. "Generally, we will not review moot or abstract questions." *Rosenfield v. Pennsylvania Auto. Ins. Plan,* 431 Pa.Super. 383, 636 A.2d 1138, 1141 (1994). Moreover, this Court will not, in most cases, enter judgments or decrees to which no effect can be given. *See Richards v. Trimbur,* 374 Pa.Super. 352, 543 A.2d 116, 119 (1988). However, appeals presenting questions capable of repetition and apt to elude appellate review will be decided even if they are technically moot. *See Jersey Shore Area School Dist. v. Jersey Shore Educ. Ass'n,* 519 Pa. 398, 548 A.2d 1202, 1204 (1988). Moreover, "moot appeals will be reviewed where a party to the controversy will clearly continue to suffer detriment due to the decision of the trial court." *Janet D. v. Carros,* 240 Pa.Super. 291, 362 A.2d 1060, 1070 (1976).

¶ 5 This case raises issues that fall into the well-recognized exception to the mootness doctrine of issues which have important public policy considerations and yet may escape review. *See Snyder v. Snyder,* 427 Pa.Super. 494, 629 A.2d 977, 980 n. 1 (1993) (holding protection from abuse order reviewable based on important public policy considerations). "Protection From Abuse Act Orders are usually temporary, and it is seldom that we have the opportunity to review one before it expires." *Id.* Subsequently, we will address the merits of the second, third and fourth questions raised in this appeal. The remaining questions are moot and will not be addressed.

¶ 6 Williams's second, third and fourth questions implicate the same analysis, thus we will discuss them simultaneously. In his second and third questions, Williams contends that the trial court erred when it failed to use the best interests of the child as its standard for determining whether to terminate Williams's visitation rights. Brief for Appellant at 16. In his fourth question, Williams asserts that the trial court erred when it denied him the opportunity to present evidence concerning the best interests of the child. Brief for Appellant at 30. After careful consideration, we find these contentions to be persuasive.

¶ 7 Our scope of review of a trial court's order of child custody is of the broadest type. *See Swope v. Swope,* 455 Pa.Super. 587, 689 A.2d 264, 265 (1997).

[A]n appellate court is not bound by findings of fact made by the trial court which are unsupported in the record, nor is it bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where it finds that the custody order is manifestly unreasonable as shown by the evidence of record . . . will an appellate court interfere with the trial court's determination. Therefore, unless the trial court's ruling represents a gross abuse of discretion, an appellate court will not interfere with its order awarding custody.

*Id.* (internal quotations omitted); *see also Graham v. Graham,* 794 A.2d 912, 914–15 (Pa.Super.2002).

¶ 8 In the case at bar, the trial court's order granted Shandra's petition for protection for abuse and modified the parties' existing custody order, thereby eliminating Williams's rights to visitation

until he was released from the halfway house. N.T. Hearing, 11/29/01, at 39. Section 6108 states that "the court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children." 23 Pa.C.S. § 6108(a). The order or agreement may include, "awarding temporary custody of or establishing temporary visitation rights with regard to minor children." 23 Pa.C.S. § 6108(a)(4). *See also Rosenberg v. Rosenberg,* 350 Pa.Super. 268, 504 A.2d 350 n. 1 (1986) (concluding that the right of the court to award temporary custody and establish temporary visitation rights with regard to minor children was intended to provide ancillary relief regarding minor children in abuse actions, but not to establish a procedure for determining permanent custody). *Cf. Dye for McCoy v. McCoy,* 423 Pa.Super. 334, 621 A.2d 144, 145 (1993) (concluding that if the terms of a custody order conflict with a PFA order, the court may alter the custody order and remand for clarification to avoid the conflict).

¶ 9 Nevertheless, it is well settled, that in any instance in which child custody is determined, the overriding concern of the court must be the best interest and welfare of the child, including the child's physical, intellectual, emotional and spiritual well-being. *See Michael T.L. v. Marilyn J.L.,* 363 Pa.Super. 42, 525 A.2d 414, 416 (1987) (citing *Commonwealth ex. rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977)).

¶ 10 Williams contends that the trial court failed to use the best interest of the child as its standard for determining the custody issues in this case, choosing instead to base its decision on Williams's behavior. Brief for Appellant at 28. In support of this contention, Williams directs this Court's attention to Judge Olszewski's comments at the conclusion of the hearing.

The relevant portion of the hearing transcripts state:

Mr. Williams should be thrilled that he had the privilege to see his daughter as a convicted Federal Felon during his incarceration at the halfway house. Number two, he should have been thrilled to death that not only did the Court give him permission to see his daughter, the Court ordered the mother to drive this child from Luzerne County to Harrisburg to see the child [sic] and I would think that when somebody has those privileges and those rights as given by a Judge, he would have been on his best behavior.

N.T. Hearing, 11/29/01, at 37. After careful consideration, we find Williams's contentions to be persuasive and conclude, accordingly, that the trial court failed to recognize principles of due process imperative to the disposition of the custody/visitation aspects of this case.

¶ 11 A parent's right to have meaningful communication and visitation with his child is a liberty interest protected by the United States Constitution. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Thus, it is against the public policy of this Commonwealth to limit or destroy the relationship between parent and child. *See In re Constance W.,* 351 Pa.Super. 393, 506 A.2d 405, 408 (1986). "Every parent has the right to develop a good relationship with the child, and every child has the right to develop a good relationship with both parents." *Id.* The laws of this Commonwealth zealously protect parental rights to visitation. *See Rosenberg,* 504 A.2d at 352. It is only in those "instances where the record shows that the parent is severely mentally or morally deficient so as to constitute a grave threat to the child's welfare" that parental visitation will be denied. *See id.* Such a determination requires the tri-

al court accept evidence to explore the child's best interests.

¶ 12 The record reveals that no evidence relating to the best interests of the child was introduced during the course of the PFA hearing. As a result, the trial court, as fact-finder, was not exposed to any of the relevant factors that would have enhanced its ability to make an informed decision about the best interests of the child. Thus, we conclude that the trial court abused its discretion when it based its custody decision exclusively on Williams's behavior at the halfway house on November 10, 2001, rather than the best interests of the child.

¶ 13 For the foregoing reasons, we affirm so much of the November 29, 2001 as granted a final protection order. We reverse so much of the November 29, 2001 order as operated to suspend the then-existing custody order and deprived Harry Williams of all contact with his daughter, Gianna.

¶ 14 Order AFFIRMED IN PART, REVERSED IN PART. JURISDICTION RELINQUISHED.