Debbie **BROOKS–GALL,** Appellant,

v.

Raymond **Michael GALL,** Appellee.

Superior Court of Pennsylvania.

Argued Oct. 22, 2003.

Filed Dec. 24, 2003.

Carol D. Deem, Harrisburg, for Pennsylvania Coalition Against Domestic Violence, amicus curiae.

Sharon Lopez, Landsville, for Brooks–Gall, appellee.

Before: JOHNSON, MONTEMURO,* and TAMILIA, JJ.

JOHNSON, J.

¶ 1 In this appeal, Debbie Brooks–Gall ("Mother") contends that the trial court violated her due process rights and the procedural safeguards of the Juvenile Act, 42 Pa.C.S. §§ 6301–6365, and acted without jurisdiction when it *sua sponte* removed her children from their home and placed them in foster care following a hearing on Mother's Protection from Abuse ("PFA") petition. We agree.

Therefore, we reverse the order and remand for the determination of the appropriate division of custody of the children between the parents.

¶ 2 Mother and Father are the parents of two minor daughters, A.R.G. and A.J.G., who were ages twelve and eight, respectively, as of the filing of this appeal. Mother filed for divorce from Father on February 20, 2002. On September 10, 2002, the trial court granted joint legal custody to both parents and primary physical custody to Father and partial custody to Mother. The parties' divorce process has been extremely contentious with the trial court finding that "the parties have engaged in unrestricted, unremitting warfare with each other wherein the children have been used as weapons; the said warfare having caused extreme emotional disturbance to said children." Trial Court Order (Custody), 10/24/02.

¶ 3 The incident which precipitated the hearing and resulting orders of October 24, 2002 occurred on October 3, 2002, when the children returned to Father's custody after a visit with Mother. As the family prepared to go to bed, an argument ensued regarding library book fines. During the argument, the younger daughter tried to close the door to her room and Father pushed the door open. The door hit the child in the forehead and caused her to fall backward. The child suffered bruising on her head and back as a result. The older daughter, on hearing her younger sister crying, came into the room. Father spanked the older daughter one time and grabbed her arm causing it to bruise.

¶ 4 As a result of the incident, Mother took the children to the emergency room and eventually obtained a temporary PFA order on behalf of the children. On Octo-

ber 24, 2002, the Honorable Brendan J. Vanston of the Court of Common Pleas of Wyoming County held a hearing on the PFA matter. Immediately after the hearing, the court dismissed Mother's PFA petition finding that the injuries did not constitute abuse and that "any injuries received by the children were insubstantial and caused by accident rather than intentional act on the part of [Father]." Trial Court Order (Findings of Fact), 10/24/02, at 2 (unnumbered). Furthermore, the trial court stated that Mother had "blown the incident of October 3 utterly out of proportion in an attempt to circumvent the Court's ruling in the prior custody case." Trial Court Opinion, 11/12/02, at 4.

¶ 5 However, the court found that the children were afraid of Father and that both Mother and Father had used the children as "weapons" against each other causing the children "extreme emotional disturbance." Trial Court Order (Custody), 10/24/02, at 1 (unnumbered). The trial court then determined that because the custody case was also before the trial court, the court was required to "reevaluate the best interests and permanent welfare of the children." Trial Court Opinion, 11/12/02, at 5. The court found that it was not in the children's best interest to reside with either parent. As no other responsible adult was available, the court directed the Wyoming County Human Services Agency, which the court refers to as Children and Youth Services Agency, to file petitions seeking a dependency adjudication and "treating the hearing as an emergency detention hearing, directed that the children be placed in a foster home pending hearing on the issue of dependency." Trial Court Opinion, 11/12/02, at 5. Following the issue of the orders, the court stated, "Folks, I warned you just keep it up and you're going to visit your kids in a foster home and that's exactly what hap-

pened. Congratulations." N.T., 10/24/02, at 192.

¶ 6 The Children and Youth Services Agency filed dependency petitions on October 25, 2002. The trial court scheduled the dependency hearing for November 14, 2002, which was the next scheduled date for dependency hearings, even though 42 Pa.C.S. Section 6335 requires hearings within ten days of the filing of a dependency petition. The court never held the dependency hearing but instead entered an interim order on December 12, 2002, granting joint physical custody to both parents commencing December 21, 2002, without mention of legal custody.

¶ 7 In early November 2002, Mother entered a petition for stay of final order with the trial court and filed a notice of appeal and petition for supersedeas with this Court. We denied the petition for supersedeas. On January 7, 2002, the trial court issued orders withdrawing the dependency petitions.

¶ 8 Mother originally appealed both the order dismissing her PFA petition and the order placing the children in foster care. The appeals were docketed by this Court at numbers 1720 MDA 2002 and 1725 MDA 2002. On October 22, 2003, the day of oral arguments and prior thereto, Mother filed a praecipe to discontinue the appeal at number 1725 MDA 2002 relating to the PFA petition. Accordingly, we will limit our review to Mother's question relating to the appeal filed at 1720 MDA 2002 concerning the custody of the children.

¶ 9 Mother presents the following question for our review:

1. Did the lower court commit an error of law when it removed Mother's children from her custody and placed them in state custody without providing due process to the liti-

gants and without following the Juvenile Act procedures?

Brief for Appellant at 7.

¶ 10 This case involves issues relating both to child custody and to custody and dependency determinations under the Juvenile Act. Our scope of review of questions relating to both issues is of the broadest type. *See Shandra v. Williams,* 819 A.2d 87, 90 (Pa.Super.2003); *see also In re R.W.J.,* 826 A.2d 10, 12 (Pa.Super.2003). While we must accept the trial court's credibility determinations, we are bound only by those findings of fact that are supported by the record. *See id.* We are not bound by the trial court's inferences and conclusions drawn from the facts and we review the court's actions for abuse of discretion. *See id.*

¶ 11 Mother's question asserts an error by the trial court that is extremely disturbing to this Court. Mother contends that the trial court violated her due process rights and the procedural safeguards of the Juvenile Act, 42 Pa.C.S. §§ 6301–6365, and acted without jurisdiction when it *sua sponte* removed the children from their home and placed the children in foster care. Brief for Appellant at 30–38. Preliminarily, we note that Father accepts and adopts Mother's argument and the Pennsylvania Coalition Against Domestic Violence filed a compelling *Amicus Curiae* Brief in support of Mother's appeal on this question.

¶ 12 Furthermore, although the trial court did return the physical custody of the children to their parents two months after the order in question, the legal custody apparently remains with the Children and Youth Services Agency and therefore the appeal is not moot. Even if the appeal were technically moot, we find that the current appeal falls within the exception to the mootness doctrine in that it presents a question "capable of repetition and apt to elude appellate review." *Shandra,* 819 A.2d at 90.

¶ 13 The only authority cited by the court to justify its actions is the court's assertion that "there was substantial evidence that the children, as a result of their parents' conduct, were 'dependent' as they lacked proper care necessary for their physical, mental and emotional health." Trial Court Opinion, 11/12/02, at 5 (citing 42 Pa.C.S. § 6302 (relating to the definition of a dependent child under the Juvenile Act)). The trial court does not suggest that this constitutes a finding of dependency, as the court ordered the Children and Youth Services Agency to file petitions seeking an adjudication of dependency in the same order as it removed the children from the parents' custody. Trial Court Order (Custody), 10/24/02.

¶ 14 Although there is no case law directly on point relating to the *sua sponte* removal of children following a PFA hearing, we are instructed by our decisions in cases where we have reversed trial court orders in which a court has *sua sponte* adjudicated children dependent or altered custody orders without providing the necessary hearings or following the required procedures.

¶ 15 In *Shandra,* we concluded that the trial court had improperly modified a child custody order following a PFA hearing without providing the parties an opportunity to introduce evidence relating to the best interests of the child. *See Shandra,* 819 A.2d at 88. We concluded that such action denied the father his right to due process. *See id.* at 91. Additionally, we found that the court "abused its discretion when it based its custody decision exclusively on [the father's] behavior ... rather than the best interests of the child" as required for a custody determination. *Id.* at 92.

¶ 16 In *In re M.B.*, this Court concluded that the trial court erred in adjudicating a child dependent where a dependency petition had not been filed in a case relating to child abuse only. 356 Pa.Super. 257, 514 A.2d 599 (1986). We stressed that courts "cannot rule on matters not before them." *Id.* at 600. We continued,

> Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues. It is even more egregious an error when the lack of notice, through variance from the pleadings, is the court's doing. For when the issue is first stated only in the court's resolution of it, the unsuspecting party has no opportunity during the proceedings to voice his objections or match his case to the altered issue.

*Id.* at 601. Furthermore, we stated that an adjudication of dependency requires that, in order to have jurisdiction, the trial court must follow the procedures of the Juvenile Act, specifically those involving Section 6321 regarding the commencement of proceedings under the Act. *See id.* In that no petition had been filed alleging dependency, we concluded that the trial court did not have jurisdiction. *See id.* at 602. We concluded that the order could not stand "[o]n either the basis of due process or the basis of jurisdiction." *Id.*

¶ 17 Similarly, in *In re A.L.*, this Court concluded that the trial court erred in *sua sponte* determining children to be dependent where the parties were before the court for the sole purpose of determining custody. 779 A.2d 1172 (Pa.Super.2001). In addition to noting the distinction between the clear and convincing standard of proof in dependency cases and the preponderance standard in custody cases, this court also found trial court error where the procedures of the Juvenile Act had not been followed. *See id.* at 1175–76. Specif-

ically, petitions alleging dependency had not been filed prior to the dependency determination as required by Section 6321 (relating to commencement of proceedings). *See id.* As a result of the failure to follow the Juvenile Act's procedures, the parties were "completely unprepared to defend or otherwise respond to allegations of dependency." *Id.* at 1176. Therefore, this Court concluded that the trial court was without jurisdiction to rule on the issue of dependency. *See id.*

¶ 18 As in *Shandra*, *In re A.L.* and *In re M.B.*, Mother and Father in this case were not presented with notice or an opportunity to present testimony or argue against the children's placement into state custody. The parties had entered the courtroom on October 24, 2002, assuming they would present testimony and argument regarding Mother's PFA petition. The parties had no reason to contemplate argument relating to the Juvenile Act. Instead, at the conclusion of the hearing the trial court denied the PFA, finding that the evidence was not sufficient to justify a order which would at most deny Father access to the children, but then determined that the evidence would justify removing the children from both parents. By acting *sua sponte,* the court denied Mother and Father due process.

¶ 19 Furthermore, as in *In re A.L.* and *In re M.B.*, the trial court acted without jurisdiction and in violation of the procedures required by the Juvenile Act. Our Legislature has instructed us to interpret and review the Juvenile Act to effectuate certain policies as follows:

§ 6301. **Short title and purposes of chapter**

\* \* \* \* \* \*

(b) **Purposes.**—This chapter shall be interpreted and construed as to effectuate the following purposes:

(1) *To preserve the unity of the family whenever possible* or to provide another alternative permanent family when the unity of the family cannot be maintained.

(1.1) To provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter.

\* \* \* \* \* \*

(3) To achieve the foregoing purposes in a family environment whenever possible, *separating the child from parents only when necessary for his welfare, safety or health or in the interests of public safety* . . . .

42 Pa.C.S. § 6301(b) (italics added). In light of these stated purposes, we determine that removal of children from the custody of their parents is not something which should be done lightly but rather only in cases of necessity.

¶ 20 To determine whether a court has jurisdiction under the Juvenile Act, as we did in *In re A.L.* and *In re M.B.*, we look to Section 6321 relating to the commencement of proceedings:

**§ 6321. Commencement of proceedings**

**(a) General rule.**—A proceeding under this chapter may be commenced:

(1) By transfer of a case as provided in section 6322 (relating to transfer from criminal proceedings).

(2) By the court accepting jurisdiction as provided in section 6362 (relating to disposition of resident child received from another state) or accepting supervision of a child as provided in section 6364 (relating to supervision under foreign order).

(2.1) By taking a child into custody in accordance with the provisions of section 6324 (relating to taking into custody).

(3) The other cases by the filing of a petition as provided in this chapter. The petition and all other documents in the proceeding shall be entitled "In the interest of . . . . . . . . . . . . . . . . . . . . , a minor," and shall be captioned and docketed as provided by general rule.

42 Pa.C.S. § 6321(a). In this case, the only subsection potentially applicable is (2.1) relating to taking a child into custody in accordance with Section 6324 which provides as follows:

**§ 6324. Taking into custody**

A child may be taken into custody:

(1) Pursuant to an order of the court under this chapter. Prior to entering a protective custody order removing a child from the home of the parent, guardian or custodian, the court must determine that to allow the child to remain in the home is contrary to the welfare of the child.

(2) Pursuant to the laws of arrest.

(3) By a law enforcement officer or duly authorized officer of the court if there are reasonable grounds to believe that the child is suffering from illness or injury or is in imminent danger from his surroundings, and that his removal is necessary.

(4) By a law enforcement officer or duly authorized officer of the court if there are reasonable grounds to believe that the child has run away from his parents, guardian, or other custodian.

(5) By a law enforcement officer or duly authorized officer of the court if there are reasonable grounds to believe that the child has violated conditions of his probation.

42 Pa.C.S. § 6324.

¶ 21 The trial court fails even to allege jurisdiction under any of these subsections. We conclude that the only potentially applicable subsections are (1) and (3).

Preliminarily, we must interpret these subsections in connection with the guiding purposes of the Act which direct us to "preserve the unity of the family whenever possible" and to separate the child from the parents "only when necessary." 42 Pa.C.S. § 6301. We conclude that the requirements of Subsection (3) relating to illness, injury and imminent danger have not been met in this case. The trial court dismissed the alleged physical abuse of daughters as "minor injuries." The trial court does not direct us to any concrete evidence that the emotional injuries were such that removal was "necessary." Rather, the court merely stated that "it was in best interests of the children" not to live with either parent and that there was "substantial evidence" that the children were dependent. Trial Court Opinion, 11/12/02, at 5. The trial court, however, failed to discuss what constituted such "substantial evidence" or determine whether the evidence was clear and convincing as required for a dependency determination. We therefore cannot find justification for the children's removal under Subsection (3).

¶ 22 Subsection (1) presents a more complicated issue, since the court's order removing the children arguably satisfied this subsection as the October 24 order could be "an order of the court under this chapter." However, we must interpret Subsection (1) in context of Subsections (2)—(5). The other subsections require serious events to occur prior to removing a child, such as an arrest, a showing of imminent danger in which removal is necessary, a runaway child and probation violations. Furthermore, the stated purposes of the Act allow the separation of a child from its family only "when necessary for his welfare, safety or health." 42 Pa.C.S. § 6301(b)(3). Here, the court determined merely that removal was in the "best interests" of the children. Therefore, we conclude that Subsection (1) does not provide the court with jurisdiction to take custody of the children.

¶ 23 We additionally note the strong public policy argument provided by Mother and *Amicus Curiae:* "If judges *sua sponte* place children in foster care after [PFA] hearings, it will have a chilling effect on victims of domestic violence seeking protective orders: victims of domestic violence will not seek court intervention and protection if they risk losing their children to the child welfare system." Brief *Amicus Curiae,* at 2. We find this public policy compelling.

¶ 24 In consideration of the lack of jurisdiction and the potentially chilling effect of the trial court's ruling, we are compelled to find that the trial court erred in removing the children from the custody of their parents. We additionally conclude that the trial court failed to provide the parents with notice of the issue by acting *sua sponte* and thus denied them due process. We therefore reverse the order and remand to the trial court to determine legal custody of the children as between the parents.

¶ 25 Order **REVERSED.** Case **REMANDED** for proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**