J-A05015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.B.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| A.J.B., | |
| Appellant | No. 1400 EDA 2015 |

Appeal from the Order Entered May 6, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2014-80848

BEFORE:  OLSON AND OTT, JJ. and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED MAY 02, 2016**

Appellant, A.J.B., appeals from the order entered on May 6, 2015, granting a petition for a final Protection from Abuse (PFA) order filed by M.B.B.[1]  We affirm.[2]

The trial court summarized the facts and procedural history of this case as follows:

_____

[1] We use the parties' initials instead of names in the caption and throughout this memorandum to protect the victim's identity.

[2]  On July 9, 2015, this Court issued a rule to show cause directed to Appellant, asking that he explain why the appeal was not moot given the expiration of the final PFA order on June 25, 2015.  Appellant responded by letter on July 16, 2015 and this Court discharged the rule to show cause and referred the matter to the panel.  We agree with Appellant that an order granting relief would have a legal effect.  Accordingly, we shall refrain from dismissing this appeal as moot.

*Former Justice specially assigned to the Superior Court.

[Appellant] and [M.B.B.] are the natural parents of an infant child. Although the parties are not married, they shared a household which includes [the infant and M.B.B.'s] eight-year-old daughter, K.H. [M.B.B.] and [Appellant] met through an online dating service which resulted in [M.B.B.] relocating away from friends and family in Kentucky in order to take up residence with [Appellant] in Pennsylvania in 2012. On or about June 26, 2014, [M.B.B.] filed a [PFA petition] (hereinafter "the [p]etition") seeking protections for herself and the minor children. [M.B.B.] alleged in the [p]etition that [Appellant] "came home and pulled me out of my daughter's bed by my hair, slammed me against the wall and was holding me by the neck and collarbone area" in addition to making threats in front of K.H. including death or bodily harm. A [t]emporary [PFA] [o]rder was issued effective June 26, 2014 until further [o]rder of [c]ourt and included, among other things, [Appellant's] exclusion and eviction [from] the parties' shared residence as well as a no contract [sic] provision relative to [M.B.B.] and the minor children. The no contact provision [] was modified to allow Appellant contact with [the parties'] [c]hild.

A hearing on the entry of a final [PFA] [o]rder was promptly scheduled for July 3, 2014; however, [] the hearing was delayed multiple times at Appellant's request, as Appellant requested time to retain counsel and additional time for counsel to prepare for the hearing. The [t]rial [c]ourt acquiesced and the [t]emporary [PFA] [o]rder entered [on] June 26, 2014, was continued for the protection of [M.B.B.] until a full and fair hearing was scheduled.

On or about September 12, 2014, the [t]rial [c]ourt held a full and fair hearing on the merits of the petition.

Trial Court Opinion, 7/16/2015, at 3-4 (record citations omitted).

At the September 2014 hearing, the trial court heard testimony from both parties and Keisha Durrant, a supervisor with Children and Youth Services, whose testimony was limited to issues regarding K.H.'s placement with her maternal grandmother. Appellant testified that he would lose his

security clearance for his job if the trial court made the temporary PFA order a final PFA order. He also voiced concern that he was the sole lessee on the apartment where M.B.B. was living and that he would be solely responsible for any damage she incurred. M.B.B. testified consistently with her allegations as set forth in the petition and stated that she was working to secure her own housing.

Thereafter,

> in order to address [] Appellant's concerns about making his exclusion from his leasehold property part of the [f]inal [PFA] [o]rder, ensure [M.B.B.'s] continued efforts in securing alternative housing, to provide [Appellant] an opportunity to maintain his security clearance, and to ensure the continued protection of [M.B.B.], the [t]rial [c]ourt took the matter under advisement, continued the [t]emporary [PFA] [o]rder for a cooling off period and scheduled a follow-up hearing date of December 18, 2014. […C]ounsel for Appellant was cognizant of the [t]rial [c]ourt's intent to consider any future misconduct of Appellant in its decision of whether to issue a [f]inal [PFA] [o]rder.

> Furthermore, during the September 12, 2014 hearing, [M.B.B.] had alluded to concerns about custody exchanges and the [t]rial [c]ourt recommended that [M.B.B.] "have her friend hand off the child" to avoid any unnecessary interactions between the parties. The [t]rial [c]ourt ma[d]e it clear that the hearing scheduled [for] December 18, 2014, was not going to be used to "re-try" the case, but instructed the parties that there were not to be any further incidents.

> On or about December 18, 2014, [M.B.B.] represented that she would be vacating the leasehold premise as of December 22, 2014 and indicated that there were subsequent incidents at custody exchanges for the [t]rial

> [c]ourt to consider. The matter was re-listed for January
> 29, 2015.

*Id.* at 6-7 (footnote and record citations omitted).

At the January 29, 2015 hearing, M.B.B. testified that there were multiple problems with the custody exchange. More specifically, M.B.B. testified that, during exchanges of the parties' child, Appellant: (1) insisted she make contact with him despite the court's directive to utilize a third-party; (2) spit at her; and, (3) on one occasion, grabbed the child's car seat with the infant in it and forcibly pushed it into M.B.B.'s chest. In contrast, Appellant presented photographs taken by a private investigator that showed several custody exchanges that appeared congenial. The trial court "afforded the photographs little weight as they demonstrated only a small portion of the exchanges." *Id.* at 9. Appellant's mother testified that she was present for some, but not all, of the custody exchanges and that they were uneventful. Appellant's mother also testified regarding a PFA petition she filed against Appellant in 2013 wherein she claimed Appellant said he was going to kill her. The trial court determined Appellant's mother was not credible when she claimed that she was not truthful when she filed the PFA petition against Appellant out of "spite and retaliation." *Id.* "At the conclusion of the hearing, the [t]rial [c]ourt found [M.B.B.'s] testimony credible and entered a [f]inal [PFA] [o]rder against Appellant [on May 6,

2015 and was set to expire on June 25, 2015]." *Id.* at 9. This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

1. Did the trial court err as a matter of law in failing to make a timely decision on [M.B.B.'s] petition for the entry of a final [PFA] order and allowing multiple hearings to be held on the issue over an approximate seven (7) month period [of] time thus giving [M.B.B.] multiple opportunities to "re-litigate" her case before the court thereby denying [Appellant] due process?

2. Did the trial court err as a matter of law in allowing hearsay testimony from a supervisor from Children and Youth Services [(CYS)] where the supervisor had no firsthand knowledge of the CYS investigation?

3. Did the trial court abuse its discretion in entering a final [PFA] order against [Appellant] against the weight of the evidence?

Appellant's Brief at 1 (complete capitalization omitted).

In his first issue presented, Appellant claims the trial court erred as a matter of law in failing to make a timely decision on M.B.B.'s PFA petition and allowed her multiple opportunities to re-litigate her case. *Id.* at 11-19. Appellant initially acknowledges that the trial court continued this case upon

_____

[3]  Appellant filed a motion for reconsideration of the PFA order on May 8, 2015. The trial court denied relief by order filed on May 21, 2015. Appellant filed a notice of appeal on May 11, 2015. On May 15, 2015, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The docket reflects that Appellant complied timely on May 26, 2015. However, the Rule 1925(b) concise statement is not contained in the certified record. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on July 20, 2015.

his request to seek counsel, but argues "from September 12, 2014 going forward, a temporary *ex parte* order, which deprived [Appellant's] liberty, was in place for approximately seven and one-half (7½) months without a decision being rendered[.]" *Id.* at 12. *Id.* Appellant first claims the trial court erred when it continued the matter at the September 12, 2014 hearing "so that [M.B.B.] could seek transitional housing[.]" *Id.* At the next hearing date, M.B.B. requested additional time to leave Appellant's apartment and complained about Appellant's behavior at custodial exchanges. N.T., 12/18/2014, at 7-10. Appellant claims it was error to relist the case. At the next hearing, in January 2015, Appellant argues that the trial court erred by:

> indicat[ing] that the hearing would be limited solely and exclusively to whether or not any further incidences of "abuse" occurred at custodial exchanges between the parties … despite the fact that (1) all custodial exchanges take place at a police station and (2) no indirect criminal contempt charges or related criminal offenses had ever been pressed against [Appellant] nor had [M.B.B.] filed a private contempt petition against [him].

Appellant's Brief at 16. He further claims, at the same January 2015 hearing, that the trial court *sua sponte* reviewed unauthenticated police reports and a copy of a PFA petition Appellant's mother had "previously filed against him and failed to prosecute." *Id.* at 17. Appellant argues the net effect was to have a temporary *ex parte* PFA order effective for approximately 10½ months, while a final order was in place for only six weeks. *Id.* at 18. Appellant claims "due process requires the prompt

- 6 -

disposition of cases when temporary relief was granted" by the trial court.

*Id.*

Our standard of review for PFA orders is well settled:

> In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. When interpreting statutes, we exercise plenary review.

*Stamus v. Dutcavich*, 938 A.2d 1098, 1100 (Pa. Super. 2007)(internal citations and quotations omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the judgment is the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. *Hoffman v. Hoffman*, 762 A.2d 766, 769 (Pa. Super. 2000) (citation and brackets omitted). "We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Id.* at 769-770.

Generally, when a PFA petition has been filed:

> Within ten business days of the filing of a [PFA] petition[], a hearing shall be held before the court, at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. The court shall, at the time the defendant is given notice of the hearing, advise the defendant of the right to be represented by counsel, of the possibility that any firearm, other weapon or ammunition owned and any firearm license possessed may be ordered temporarily relinquished, of the options for relinquishment of a firearm [], of the possibility that Federal law may prohibit the

possession of firearms, including an explanation of 18 U.S.C. § 922(g)(8) (relating to unlawful acts), and that any protection order granted by a court may be considered in any subsequent proceedings under this title. This notice shall be printed and delivered in a manner which easily attracts attention to its content and shall specify that child custody is one of the proceedings where prior protection orders may be considered.

23 Pa.C.S.A. § 6107(a).

"If a plaintiff petitions for [a] temporary order for protection from abuse and alleges immediate and present danger of abuse to the plaintiff or minor children, the court shall conduct an *ex parte* proceeding [and] may enter such a temporary order as it deems necessary to protect the plaintiff or minor children when it finds they are in immediate and present danger of abuse."  23 Pa.C.S.A. § 6107(b)(1),(2).  "The order shall remain in effect until modified or terminated by the court after notice and hearing."  23 Pa.C.S.A. § 6107(b)(2).  "Pursuant to § 6107(c), trial courts have discretion to continue evidentiary hearings regarding final PFA orders and enter appropriate temporary *ex parte* orders to cover the intervening time." **Ferko-Fox v. Fox**, 68 A.3d 917, 926 (Pa. Super. 2013), *citing* 23 Pa.C.S.A. § 6107(c) ("If a hearing under subsection (a) is continued and no temporary order is issued, the court may make *ex parte* temporary orders under subsection (b) as it deems necessary.").

"Due process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues."  **Brooks-Gall v. Gall**, 840 A.2d 993, 997 (Pa. Super. 2003).  "The

fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." ***Lanza v. Simconis***, 914 A.2d 902, 905 (Pa. Super. 2006). "In determining whether a hearing pursuant to Section 6107(a) comports with due process, this Court has held that the parties must, at a minimum, have the opportunity to present witnesses, testify on one's behalf, and cross-examine the opposing party and his/her witnesses." ***Id.*** at 906.

Here, there is no dispute that the trial court scheduled a hearing on the PFA petition within 10 days of its filing. After various continuances at Appellant's request, the trial court held a hearing on September 12, 2014 and Appellant concedes that the continuances leading up until that hearing were proper. At the September 2014 hearing, the parties presented evidence regarding the allegations as set forth in the PFA petition. Appellant also presented evidence that M.B.B. was residing in the parties' previously shared residence, but that Appellant was the only person listed on the lease and was solely responsible for any damages to the property. N.T., 9/12/2014, at 83-84. Moreover, Appellant testified that his job might be compromised if he lost his security clearance as a consequence of the entry of a final PFA against him. ***Id.*** at 93. Therefore,

> in order to address both Appellant's concerns about making his exclusion from the leasehold property part of the [f]inal [PFA] [o]rder, ensure [M.B.B.'s] continued efforts in securing alternative housing, to provide [Appellant] an opportunity to maintain his security clearance, and to ensure the continued protection of [M.B.B.], the [t]rial

- 9 -

[c]ourt took the matter under advisement, continued the [t]emporary [PFA] [o]rder for a cooling off period and scheduled a follow-up hearing on December 18, 2014.

Trial Court Opinion, 7/16/2015, at 6.

More specifically, at the September 2014 hearing, the trial court and defense counsel engaged in the following exchange:

> [Defense]:    Your Honor, as it relates to December 18 do I assume that's going to be a dismissal in the absence of any new allegations?
>
> The court:    Well, I'm doing that because it's three months.  I want to see if [M.B.B.] can get out of [] the apartment by then.  And I'm hoping that if she indicates to CYS that [she] need[s] to be out in three months they'll move [] forward a little bit [since] she has nobody here to move in with.
>
> *         *         *
>
> [Defense]:    […M]y only concern is going to be that we have the PFA outstanding.  […]  I would like to be able to tell [the Master hearing the parties' custody dispute] that Your Honor's direction is in the absence of a subsequent incident that this matter's going to be dismissed at that time.  That I can represent fairly and appropriately to Master McNulty that your thought process was a longer cooling off period in addition to the two months or so they've already had.  And then, you know  -- and also give her an opportunity to transition into appropriate housing[.]
>
> The court:    Yes.
>
> [Defense]:    But I want to make sure that I'm not in a situation where I'm back here on December 18 and we're retrying what we just tried and Your Honor –
>
> The court:    No, you're not going to retry it.  I've heard the testimony.  I've taken it under advisement, continue it for three months.  I don't want any incidents.

- 10 -

* * *

At this point, I'm not ready to enter a final order.

[Defense]:    Okay.  So you're taking it under advisement.

The court:    Taking it under advisement.

[Defense]:    And, it's relisted for December 18.

The court:    Yes.

[Defense]:    Is that correct, Your Honor?

The court:    And I want everyone to behave themselves at the [custody] exchanges.  All right.  So you still have your temporary order in effect, ma'am.

[M.B.B.]:    Okay.  So when we come back on December 18 is that going to be the end of the PFA?

The court:    I don't know yet. […] I want to see what happens – [] between the two of you.

N.T., 9/12/2014, at 103-106.

At the December 18, 2015 hearing, M.B.B., representing herself *pro se*, told the trial court that she signed a lease and needed additional time to move her remaining belongings from the parties' shared residence.  N.T., 12/18/2015, at 7.  She also stated she encountered "continuous problems" with Appellant and was "scared to lose" the PFA order.  *Id.* at 9.  M.B.B. further testified that at a custody exchange, Appellant "grabbed the car seat and hit [her] with it."  *Id.* at 10.  The trial court gave M.B.B. until the following Monday to vacate the apartment.  *Id.* at 11, 15.  The trial court continued the hearing until January 29, 2015, so the parties could obtain police reports and/or bring in witnesses to discuss custody exchanges.  *Id.*

- 11 -

at 11, 13, 17. The trial court stated that it still had not rendered a final decision, but suggested it "would dismiss [the PFA petition] if there were no further problems" to be determined at the next hearing. *Id.* at 12, 14. The trial court agreed that there would be no further continuances and the case would be marked as "must be tried." *Id.* at 17.

Thereafter, the trial court held a hearing on January 29, 2015, wherein both parties were represented by counsel. At the start of the January 2015 hearing, defense counsel stated:

> As I understand it, Your Honor, we tried this matter back in September of last year. And Your Honor took it under advisement upon hearing that [M.B.B.] was intending to vacate an apartment that was solely leased in [Appellant's] name. We – it was listed for a review and took the matter under advisement. As Your Honor indicated it was listed for mid-December in front of Your Honor. At that time [M.B.B.] indicated to the Court that she was going to be vacating [the leased premises] the following Monday, which she did. And the matter – we continued the matter until today. I don't know the scope of what Your Honor wants to do with it today. If Your Honor's going to rule upon it today or if Your Honor's going to hear more testimony about any more alleged violations that occurred at the custodial exchanges that [M.B.B.] alleged to the [c]ourt the last time we were here. Even though I would note for the record that there has never been a contempt filing in this case at all, or any subsequent criminal charges or anything else. So I guess my preliminary issue, Your Honor is I'm not sure the scope of what you want us to do here today.
>
> *                *                *
>
> And that's why I'm asking, Your Honor, I'm not sure the scope of what you would like to do. If you would like to hear testimony as far as what happened at custodial exchanges, what the condition of the apartment was when she left it, that sort of thing, we're certainly prepared. My

- 12 -

client is prepared to testify that he literally has not said a word to [M.B.B.] since June of 2014. I have other people present in the courtroom including [Appellant's] mother, who has been present at all, if not almost all, every custodial exchange that took place in this case. I would also note as opposing counsel is aware since he represents [M.B.B.] in the custody matter as well that my client has had surveillance done over the course of the last six or nine months on [M.B.B.] at the apartment that she was living at. Which would also include, if my opposing counsel will remember correctly from the custody matter, photographs that were taken of the parties actually at the time of the custodial exchanges. Which I would also add editorially, every single custodial exchange in this case has taken place at a police station as mandated by the [c]ourt [o]rder entered in this case. So we have custodial exchanges every single time there have been other people there, they have occurred at police stations. I actually have photographs of some of these exchanges taking place over the last six to nine months. And I have people here – I have someone here to testify about those custodial exchanges what happened. Again, they've all been at police stations. There have been no allegations of contempt filed with the [c]ourt saying that my client, you know, if he struck her with a car seat, which is what I think she said the last time that we were here, she's literally saying he had an active temporary PFA against him. He physically struck me in front of the police station. I filed no criminal charges and I did not file a contempt petition with the [c]ourt. But if Your Honor wants to have that hearing we're ready to go. As I indicated to you back in December we were ready to go then. We're just as ready to go today as we were then if you want to have that hearing. It's a matter of the scope of what Your Honor wants to hear at this point.

N.T., 1/29/2015, at 4-7. Thereafter, the trial court conducted the hearing wherein Appellant and his mother testified. Appellant also presented the trial court with still photographs of several custody exchanges.

Based upon all of the foregoing, we conclude the trial court afforded Appellant due process and did not err as a matter of law or abuse its

- 13 -

discretion in continuing the matter and leaving the temporary PFA order in effect until entering a final PFA order. The trial court was permitted to enter a temporary PFA order as it deemed necessary to protect M.B.B. and the parties' minor child, when it found they were in immediate danger of abuse. **See** 23 Pa.C.S.A. § 6107(b). The trial court is permitted discretion to continue evidentiary hearings regarding final PFA orders and enter appropriate temporary *ex parte* orders to cover the intervening time. **See Ferko-Fox v. Fox**, 68 A.3d at 926; 23 Pa.C.S.A. § 6107(c).

Here, there were multiple issues at play in this case, including, *inter alia*, M.B.B.'s allegations of fear, the parties' housing situation, Appellant's employment concerns, and purported disputes at custodial exchanges. The trial court wanted to allow the parties some time to sort out their differences and come to an amicable resolution, while still protecting M.B.B. and the parties' child. It sought to balance Appellant's financial interest in the apartment he leased and potential problems with his security clearance with his employer with the safety concerns voiced by M.B.B. The trial court stated that it would consider dismissing the PFA petition once M.B.B. secured new housing and if custodial exchanges improved. There was simply no manifest unreasonableness, partiality, prejudice, bias, or ill-will against Appellant in continuing the matter for additional evidence and testimony on these issues.

Moreover, at no point did the trial court allow M.B.B. to re-litigate the allegations as set forth in her petition; the trial court relegated testimony

related to the PFA petition to the first day of the hearings. In fact, at the last hearing in January 2015, when counsel for M.B.B. asked her if there were other reasons why she was afraid of Appellant, defense counsel objected to re-litigating the issue, and the trial court agreed stating it was not going to "go through the previous testimony." N.T., 1/29/2015, at 21. Thus, we reject Appellant's contention that the trial court allowed re-litigation of the underlying allegations as set forth in the PFA petition.

Moreover, at each step of the proceeding, the trial court told Appellant the purpose of the next hearing. Thus, Appellant received notice of the issues that would be before the court and he had an opportunity to present his case in relation to those issues. At the beginning of the last hearing, in January 2015, defense counsel reiterated and confirmed the issues that were before the trial court, including the parties' housing situation and custodial exchanges. Appellant testified and so did his mother. Appellant presented surveillance photographs, taken by a private detective, depicting some of the custodial exchanges. Furthermore, M.B.B. testified and defense counsel cross-examined her. Thus, Appellant had the opportunity to present witnesses, testify on his own behalf, and cross-examine the opposing party and her witnesses. Appellant received due process and, thus, his first issue lacks merit.[4]

_____

[4] We do, however, express concern that the trial court held the last of the hearings on January 29, 2015, but did not enter the final PFA order until May
*(Footnote Continued Next Page)*

In his second issue presented, Appellant claims the trial court erred by allowing Keisha Durrant to testify in her capacity as a supervisor from CYS. Appellant's Brief at 19. Appellant claims the testimony was inadmissible hearsay. *Id.* at 19-24. More specifically, Appellant avers that Durrant "testified that services were provided through CYS and also testified about the nature of allegations of abuse of K.H. by [Appellant]." *Id.* at 20. Appellant further maintains that "[w]hile [] Durrant testified that all allegations of abuse directed toward [Appellant] were unfounded, she testified about audio tapes being submitted to CYS that allegedly contained sounds of [Appellant] yelling at K.H." *Id.* at 20. Appellant challenges the trial court's decision to admit the testimony, on grounds that Appellant did not specifically object, as well as the trial court's determination that the statements qualified "as generic background of CYS' involvement" under the business records exception to hearsay. *Id.* at 21. Appellant also claims the trial court erred by further finding the error was harmless, "because [] Durrant's testimony was viewed as being helpful to [Appellant] in the underlying PFA case." *Id.*

_(Footnote Continued)_ _____

6, 2015. We believe that the almost four-month delay is unacceptable. However, because the temporary PFA order was less restrictive on Appellant's liberty interests than a final PFA order, we deem the delayed filing harmless.

- 16 -

Upon review of the notes of testimony, we agree with the trial court's assessment that Appellant did not lodge a timely, specific objection that Durrant's testimony constituted hearsay. We previously determined:

> A party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made. ***Commonwealth v. Cousar***, 928 A.2d 1025, 1041 (Pa. 2007), *cert. denied,* 128 S.Ct. 2429, (2008). If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal. ***Commonwealth v. Arroyo***, 723 A.2d 162, 170 (Pa. 1999); ***Commonwealth v. Stoltzfus***, 337 A.2d 873, 881 (Pa. 1975) (stating: "It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post-trial."); ***Commonwealth v. Duffy***, 832 A.2d 1132, 1136 (Pa. Super. 2003), *appeal denied,* 845 A.2d 816 (Pa. 2004) (stating party must make timely and **specific** objection to preserve issue for appellate review).

***Commonwealth v. Lopez***, 57 A.3d 74, 81-82 (Pa. Super. 2012) (quotations omitted; emphasis in original).

In this case, during direct examination of Durrant, counsel for Appellant objected to leading questions by M.B.B. and questions pertaining to "illegally obtained audiotapes" which lead to a referral to CYS. N.T., 9/12/2014, at 47. Counsel for Appellant claimed the audiotapes were inadmissible in violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act. ***Id.*** at 50-52. Counsel for Appellant touched upon the fact that Durrant was a supervisor at the time CYS was involved, however, he did not lodge a specific objection that Durrant's testimony constituted hearsay, not subject to exception. ***Id.*** at 47-48. Appellant

- 17 -

cannot change tack now and claim his objection was based upon hearsay. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Because Appellant failed to present a specific claim that Durrant's testimony constituted hearsay, he is not entitled to appellate review of this claim.

In his third issue presented, Appellant claims that the trial court granted the final PFA against the weight of the evidence presented. Appellant's Brief at 24-26. He claims M.B.B.'s testimony was not credible because, she "was unable to testify … if she took or how many oxycodone pills or other narcotic prescription she took on the date of the alleged incident" despite Appellant testifying "that he personally saw her take 30 milligrams of oxycodone on the morning of the alleged incident." *Id.* at 24-25. He further claims that "[d]espite [M.B.B.'s] testimony of extensive physical abuse that she suffered at the hands of [Appellant], she did not seek any medical care or have any documentary evidence of bruises, red marks, scratches or cuts to her person." *Id.* at 25. Moreover, he claims that "photographs taken by a private investigator who was hired to surveil the custodial exchanges clearly indicated that [M.B.B.] did not appear disturbed, harassed or bothered at the custodial exchanges which went peacefully." *Id.* Further, Appellant maintains "the police report admitted into evidence … clearly indicates that the custodial exchange in question took place by the surveillance camera at the police station which revealed no indication of any problems." *Id.*

Our standard of review is well-settled:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the [] verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-1055 (Pa. 2013) (internal quotations and citations omitted; emphasis in original). "This court defers to the credibility determinations of the trial court as to witnesses who appeared before it." ***Karch v. Karch***, 885 A.2d 535, 537 (Pa. Super. 2005) (citations

and quotations omitted). A PFA petitioner, such as M.B.B., must prove her allegations of abuse by a preponderance of the evidence, which "is defined as the greater weight of the evidence, *i.e.,* to tip a scale slightly is the criteria or requirement for preponderance of the evidence." ***Id.***

Here, the trial court found M.B.B.'s allegations of abuse credible. Trial Court Opinion, 7/16/2015, at 9. We may not disturb this determination. Upon review of the record, the trial court noted that the police report taken at the time of one of the custody exchanges indicated that police did not capture the exchange on surveillance video. N.T., 1/29/2015, at 67. Thus, the trial court did not admit the police report into evidence and did not rely upon it in rendering its decision. ***Id.*** Additionally, the trial court admitted the photographs taken by Appellant's private investigator into evidence, but noted they were given "limited weight because they're photographs, so something could have happened before or after the photograph was taken." ***Id.*** at 71. Finally, we note that Appellant's mother testified that she was present for approximately 90% of the custodial visits, but could not be certain that private detectives were present for all of the exchanges that she missed. ***Id.*** at 51, 57. As such, the trial court "could not conclude [the photographs presented were] inconsistent with [M.B.B.'s] testimony" as "the still photographs [] captured loose seconds of an exchange." Trial Court Opinion, 7/16/2015, at 16. Under our deferential standard of review, we agree and discern no abuse of discretion.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/2/2016