J-A19030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WENDY L. BARRY ON BEHALF OF C.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WARREN PARK | |
| Appellant | No. 1837 WDA 2013 |

Appeal from the Order Entered October 30, 2013
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 1510 OF 2013D

BEFORE:  BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 27, 2014**

Appellant, Warren Park, appeals from the order entered on October 30, 2013.  We reverse.

The factual background of this case is as follows.  Wendy L. Barry ("Mother") has three daughters, 11-year-old C.S., 14-year-old K.N, and eight-year-old K.B. (collectively "the children").  Mother has primary physical custody of the children and Kathleen Barry Park ("Grandmother") has partial physical custody of the children every other weekend.  Mother and Grandmother are involved in an acrimonious custody dispute involving the children.  Appellant is married to Grandmother, and is thus the children's step-grandfather.

C.S. has known Appellant for her entire life.  Appellant has pierced her ears, along with the ears of K.N. and K.B., on multiple occasions.  One day,

_____

* Former Justice specially assigned to the Superior Court

while in Appellant's driveway, C.S. "begg[ed] and begg[ed]" Appellant to pierce her ear for the third time. N.T., 7/31/13, at 21. Appellant declined to do so, but whispered that "if you want, I can pierce your boobs for you." ***Id.*** C.S. exclaimed "Ooh" and walked away. ***Id.*** at 22. Although C.S. had no other incidents akin to that situation, C.S. now feels awkward when Appellant hugs and kisses her before bed and she is afraid to go to Appellant's house because she is unsure if Appellant or Grandmother will hurt her. ***Id.*** at 22, 26, 27. Allegheny County's Office of Children, Youth, and Families investigated C.S.' allegations against Appellant and declined to take any action.[1]

The procedural history of this case is as follows. On July 19, 2013, Mother filed a petition for a protection from abuse order ("PFA") pursuant to the Protection From Abuse Act, 23 Pa.C.S.A. § 6101 *et seq*. ("the Act"). The petition was filed on behalf of the children. Although a custody dispute between Mother and Grandmother was pending in Allegheny County, and despite the fact that the alleged incident occurred in Allegheny County, Mother requested the PFA from the Court of Common Pleas of Westmoreland County, the county in which Mother and the children reside. A temporary PFA was issued that same day. On July 31, 2013, an evidentiary hearing

---

[1] The investigation was conducted by Allegheny County's Office of Children, Youth, and Families because Appellant and Grandmother live in Allegheny County and the alleged incident occurred in Allegheny County. The acrimonious custody dispute between Grandmother and Mother is also being adjudicated in Allegheny County.

was conducted. On August 9, 2013, a final PFA was issued. The final PFA provided protection for C.S., K.N., and K.B.

Appellant filed a motion for reconsideration which the trial court granted on August 29, 2013. On September 18, 2013, the trial court heard argument on whether to re-affirm, modify, or vacate the PFA. On October 30, 2013, the trial court re-affirmed the PFA as to C.S. but vacated the PFA as to K.N. and K.B. This timely appeal followed.[2] During the pendency of this appeal, on July 31, 2014, the PFA expired.

Appellant presents three questions for our review:

1. Whether the [t]rial [c]ourt erred in entering a [PFA] against [Appellant] when there was insufficient evidence to support a finding that [C.S.] was in reasonable fear of imminent serious bodily injury by the actions of [Appellant]?

2. Whether the [t]rial [c]ourt erred in entering a [PFA] against [Appellant] when there was insufficient evidence to support a finding of abuse in this case as defined by the [Act]?

3. Whether the [t]rial [c]ourt erred in entering a [PFA] against [Appellant] when its finding of abuse under the [Act] was clearly erroneous and a result of overriding and misapplying the law?

Appellant's Brief at 7.[3]

Preliminarily,

---

[2] On November 22, 2013, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). **See** Pa.R.A.P. 1925(b). On December 12, 2013, Appellant filed his concise statement. On February 27, 2014, the trial court issued its Rule 1925(a) opinion. All issues raised on appeal were included in Appellant's concise statement.

[3] We have re-numbered the issues for ease of disposition.

we must determine if this matter is properly before this Court. In the instant case, the period governed by the order ended on [July 31, 2014.] Generally, we will not review moot or abstract questions. Moreover, this Court will not, in most cases, enter judgments or decrees to which no effect can be given. However, appeals presenting questions capable of repetition and apt to elude appellate review will be decided even if they are technically moot. Moreover, moot appeals will be reviewed where a party to the controversy will clearly continue to suffer detriment due to the decision of the trial court.

This case raises issues that fall into the well-recognized exception to the mootness doctrine of issues which have important public policy considerations and yet may escape review. Protection From Abuse Act [o]rders are usually temporary, and it is seldom that we have the opportunity to review one before it expires.

**Shandra v. Williams**, 819 A.2d 87, 90 (Pa. Super. 2003) (internal quotation marks and citations omitted); **see Custer v. Cochran**, 933 A.2d 1050, 1053 n.3 (Pa. Super. 2007) (*en banc*). Having determined that this appeal is properly before us, we turn to the merits of Appellant's arguments.

Appellant first contends that the evidence was insufficient to conclude that he put C.S. in reasonable fear of imminent serious bodily injury.

As we have stated:

When a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it. Furthermore, the preponderance of the evidence is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence.

*Ferko-Fox v. Fox*, 68 A.3d 917, 926–927 (Pa. Super. 2013) (citation omitted).

> Under the Act, abuse is defined as:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> (3) The infliction of false imprisonment pursuant to 18 Pa.C.S.[A.] § 2903 (relating to false imprisonment).
>
> (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S.A. § 6102(a).

The trial court found abuse under paragraph 2 of the definition. **See** Trial Court Opinion, 2/27/14, at 2 (C.S. is in "reasonable fear of imminent serious bodily injury, more specifically that she is in fear of sexual abuse of herself, a minor child, which is also included in the definition of abuse[.]"). Serious bodily injury is defined as "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301; **see** 23 Pa.C.S.A. § 6102(b) (words not

specifically defined in 23 Pa.C.S.A. § 6102(a) shall have the same meaning as they have in Title 18 of the Pennsylvania Consolidated Statutes).

The trial court relied upon the following testimony given by C.S. in making its determination. "It just feels awkward now whenever I see [Appellant] to know that he said that. It's awkward for a grandpa to say that to me." N.T., 7/31/13, at 22. "[N]ow that he made that comment, now it's just really awkward whenever he makes me hug him and makes me give him a kiss, like, before bed. Like, I tell him I'm too old." *Id.* at 26. "[I'm] just scared now, because[ ] this weekend is supposed to be [Grandmother's], and I don't know if [Appellant's] go[ing to] be there or if [] he's not. And if he is I don't know if he's going to hurt me." *Id.* at 27.

We conclude that this testimony was insufficient for the trial court to conclude that C.S. reasonably feared imminent sexual abuse by Appellant. C.S. never testified that she feared Appellant would sexually abuse her. Instead, she merely stated that she felt awkward around Appellant after he made the inappropriate comment. Even viewed in the light most favorable to C.S., a sense of awkwardness cannot be reasonably extended to a fear of sexual abuse.

As the trial court found her testimony credible, we must also accept C.S.' testimony that she fears Appellant may hurt her. However, no reasonable inference of fear of **sexual** abuse can be drawn from that fear. The only reasonable inference that can be drawn is that C.S. fears some

type of injury. That does not rise to the level of serious bodily injury, which is required for a PFA under paragraph 2 of the abuse definition. C.S. did not elaborate on the type of harm that she feared. The trial court made an unsupported inference that the type of abuse that C.S. feared was sexual abuse.

Furthermore, under paragraph 2 of the abuse definition the fear must be imminent. There is no evidence that any alleged abuse was imminent. To the contrary, after Appellant whispered the inappropriate comment to C.S., C.S. both called and texted Mother. *See* N.T., 7/31/13, at 28-29. C.S. did not communicate the comment, or any fear that she had regarding Appellant, to Mother at that time. *Id.* at 29. She did not tell Mother about the comment immediately upon her return home. Instead, the record reflects that C.S. waited several days after she came home to relay the comment to Mother. *Id.* at 23. If the fear of abuse were truly imminent, C.S. would have immediately told Mother of the alleged comment, or, at the very least, told her as soon as she returned home. Thus, we conclude that any feared abuse was not imminent.

Accordingly, we conclude that the evidence was insufficient to support the trial court's conclusion that C.S. reasonably feared an imminent and

J-A19030-14

substantial risk of sexual abuse perpetrated by Appellant. Therefore, we conclude that the trial court erred by granting the PFA.[4]

Order reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2014

---

[4] Even if we were to find that the evidence was sufficient to support the trial court's conclusion that C.S. reasonably feared she would imminently be sexually abused by Appellant, we would conclude that this fear was not abuse as defined by the Act. **Cf. Commonwealth v. Kerrigan**, 920 A.2d 190, 202 (Pa. Super. 2007), *appeal denied*, 932 A.2d 1286 (Pa. 2007) (holding that an adult male infecting a minor female with Human Papillomavirus and genital warts during sexual intercourse constituted infliction of serious bodily injury). Notably, this Court in **Kerrigan** did not rely merely on the sexual intercourse between an adult male and a female under 13 years old in determining that serious bodily injury had been inflicted. Thus, we would conclude that the mere fear of sexual abuse, without more, is not abuse under paragraph 2 of the Act's definition. Accordingly, we would have granted Appellant relief on his second issue.