J-S21017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| JOHNIE NORMAN SPIVEY, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASIOVII M. BENJAMIN | : | |
| | : | |
| Appellant | : | No. 1601 MDA 2022 |

Appeal from the Order Entered October 31, 2022,
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2022-05559

BEFORE: BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: JULY 25, 2023**

Appellant Asiovii M. Benjamin (Mother) appeals from the order granting the petition filed pursuant to the Protection from Abuse (PFA) Act[1] by Appellee Johnie Norman Spivey, III (Father), on behalf of himself and the parties' minor child, J.L.M.S. (Child).[2] After review, we affirm.

The trial court summarized the relevant facts and procedural history of this case as follows:

> This appeal arises from the entry of a final [PFA order] entered against [Mother] by this court on October 31, 2022 after a multi-day evidentiary hearing. For the sake of brevity, and because [Mother] is not challenging the order as entered on behalf of

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S. §§ 6101-6122.

[2] The record reflects that Child was born in July of 2015. **See** PFA Pet., 6/29/22.

[Father] himself, the focus of this opinion will be on the order as entered against [Mother] on behalf of [Child].

This action was commenced on June 29, 2022 when [Father] filed a petition for a PFA against [Mother], who is his former paramour and with whom he shares one child, J.L.M.S. . . . .

*    *    *

An *ex parte* hearing was held on June 29, 2022 in front of the Honorable Carrie E. Hyams, after which the court entered a temporary [PFA o]rder. Judge Hyams then appointed Hannah White-Gibson, Esquire to serve as Guardian *ad litem* (hereinafter "the GAL"). The final hearing in this matter was continued a number of times to accommodate the Children and Youth Services (hereinafter "CYS") investigation.

The final hearing commenced before this court on October 12, 2022, at which time testimony was heard from [Father] and [Mother]. . . .

*    *    *

[Father] also testified on behalf of Child. To support his argument that a Final PFA order be granted for the benefit of Child, [Father] testified that [Mother] hit Child with a broomstick on her head, leaving a scar, but he could not say when it happened. [Father] testified that he had only learned about the incident during the CYS interview of Child. [Father] testified that after he found out about the incident, he examined Child's head and located the scar.

[Father] was then asked whether he had taken Child to any medical appointments, to which [Father] responded that he had not been given the opportunity to attend medical appointments because he did not have physical custody of . . . Child prior to filing the PFA Petition. [Father] further reported that Child had not seen a doctor or dentist since 2019. [Father] then stated that since he obtained custody of Child, he took her to the dentist, where it was found that she had nine cavities and had to have seven teeth extracted. On cross-examination, [Father] was questioned as to why he had not taken . . . Child to the dentist instead of relying on [Mother] to do so, to which [Father] responded that he did not have Child's insurance information, and he was not listed on Child's birth certificate as her father.

- 2 -

[Mother] originally testified that she took Child to a dentist's office in June 2021, and that Child was then referred to a specialist. [Mother] then stated that it took her six months to find a specialist that would take her insurance and that she could afford. During this time period, Child reported pain with her teeth to both [Mother] and her teacher at school, but [Mother] would just give [Child] Tylenol to cope with the pain. [Mother] testified that she and her aunt took Child to a dental specialist in Lancaster who wanted to "save" [Child's] teeth instead of extracting them. [Mother] then stated that the dentist was not able to schedule the appointment to treat Child's teeth because he was not taking new patients and/or his office was closed due to the COVID-19 Pandemic. Eventually, [Mother] admitted that the cavities were never filled and still remain.

To support her case, [Mother] called as a witness her aunt, Tina Marie Buchanan. Ms. Buchanan testified that she took Child and [Mother] to a dentist in Lancaster. She did not recall exactly when the appointment was but believes that it was fall because it was cold outside. Ms. Buchanan stated that the dentist told [Mother] that there was not anything he could do for Child's teeth. She then testified that [Mother] continued to look for a dentist to assist with Child's teeth.

On the second day of the hearing, counsel for [Mother] submitted records from Dental Dreams dentistry showing that Child was seen there, not in June of 2021, but in July of 2019, and at that time, Child had cavities in four teeth. Simultaneously, [Mother] offered an email from a pedodontist in Lancaster, showing that Child was seen on June 17, 2020 and was "in a lot of pain," and that the record said "will treat." The email does not show that a follow-up appointment was made, but makes note of the difficulty in scheduling appointments at that time due to the COVID-19 Pandemic.

This court interviewed . . . Child, and while she did testify to [Mother] hitting her with a broomstick on the head, this court did not find that testimony to be credible. The GAL further noted that CYS investigated the incident and reported it as unfounded due to lack of physical evidence.

Trial Ct. Op., 2/10/23, at 1-5 (citations omitted and formatting altered).

On October 31, 2022, the trial court granted a six-month final PFA order against Mother on behalf of Child based on Mother's failure to obtain adequate dental care for Child after learning that Child's teeth were in a state of decay beginning in July of 2019. Trial Ct. Op., 2/10/23, at 5; PFA Order, 10/31/22, at 1. The trial court concluded that Mother's failure to provide dental care amounted to serious physical neglect and constituted abuse under the PFA Act. Trial Ct. Op., 2/10/23, at 5; PFA Order, 10/31/22, at 1. The PFA order further awarded Father sole physical and legal custody of Child.[3] PFA Order, 10/31/22, at 1. Mother filed a motion for reconsideration which was denied on November 14, 2022, and then Mother filed a timely appeal.[4] Both Mother and the trial court complied with Pa.R.A.P. 1925.

_____

[3] Because the PFA order relates to and addressed the custody of Child, this Court informed the parties that this appeal would be listed as a "Children's Fast Track" pursuant to Pa.R.A.P. 102. *See* Order, 1/20/23. However, we note that a "PFA matter, while interrelated to [a] custody matter, is a wholly separate matter on a wholly separate docket." *E.K. v. J.R.A.*, 237 A.3d 509, 527 (Pa. Super. 2020).

[4] We recognize that by its terms, the six-month PFA order entered on October 31, 2022, has expired. *See* PFA Order, 10/31/22, at 1-2. Further, we are cognizant that Father contends that because the PFA order has expired, the instant appeal is moot. *See* Father's Brief at 12. However,

> [t]his Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court. . . . [T]his Court has employed exceptions to the mootness doctrine to review issues stemming from expired PFA

*(Footnote Continued Next Page)*

Before we reach the merits of Mother's appeal, we must first determine whether Mother has preserved the issues she purports to raise on appeal. ***See Tucker v. R.M. Tours***, 939 A.2d 343, 346 (Pa. Super. 2007) (stating that "this Court may *sua sponte* determine whether issues have been properly preserved for appeal" (citation omitted)). In her Rule 1925(b) statement, Mother raised the following issues:

> 1. The trial court improperly included an issue (dental) that was not contained in the original [PFA] complaint in its deliberations and as the basis for a finding of abuse as to [C]hild.

> 2. The trial court's decision was based upon insufficient evidence to support a finding of abuse as the sole basis for the finding expressed in the order was based upon dental information/allegations that were not included in the original complaint.

---

orders. ***Shandra v. Williams***, 819 A.2d 87, 90 (Pa. Super. 2003) (quoting ***Snyder v. Snyder***, 629 A.2d 977, 980 n.1 (Pa. Super. 1993)) ("Protection from Abuse Act Orders are usually temporary, and it is seldom that we have the opportunity to review one before it expires.")[, *superseded on other grounds by statute*, 23 Pa.C.S. § 5328, *as stated in* ***C.H.L. v. W.D.L.***, 214 A.3d 1272, 1281 (Pa. Super. 2019)].

***Ferko-Fox v. Fox***, 68 A.3d. 917, 920-21 (Pa. Super. 2013) (*per curiam*) (citation omitted and some formatting altered). Because the trial court is permitted to consider the October 31, 2022 PFA order in a subsequent PFA proceeding or child custody proceeding, and because the order will appear in a criminal records check conducted pursuant to 23 Pa.C.S. § 6105(e)(3), Mother will suffer some detriment due to the entry of the PFA order, and we will not dismiss the appeal as moot. ***See N.H. v. M.E.***, 2920 EDA 2018, 2019 WL 3780900, at *2 (Pa. Super. filed Aug. 12, 2019) (unpublished mem.); ***see also*** Pa.R.A.P. 126(b) (stating that an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019, may be cited for its persuasive value).

3. The trial court improperly found that "neglect" occurred on the basis of an uncharged allegation and improperly equated alleged "neglect" with "abuse."

Mother's Rule 1925(b) Statement, 1/17/23, at 2-3 (formatting altered). The issues Mother raised in her Rule 1925(b) statement assert that the trial court erred when it addressed claims concerning Mother's failure to provide dental care for Child because that specific issue was not included in the PFA complaint. *See id.*

However, in her appellate brief, Mother does not address the issues raised in her Rule 1925(b) statement and instead presents the following claims of trial court error:

1. Whether the trial court committed an error of law by finding that [Mother] engaged in 'serious physical neglect' by making a decision in consultation with [C]hild's dental professional not remove multiple teeth containing cavities but instead to seek restorative dental care; said care could not be provided due to the COVID-19 pandemic orders and protocols issued by the Commonwealth preventing performance of certain medical services in Pennsylvania, including, but not limited to, dentists and specialist dental providers, for a period in excess of two (2) years (2020-2022+) after discovery of the cavities here in question?

2. Whether the trial court committed an error of law by finding that multiple childhood cavities are an "injury" or "serious physical injury" that constitutes "abuse" or "bodily injury" under the [PFA] Act?

Mother's Brief at 6 (formatting altered).

Father responds that Mother waived her issues on appeal for two reasons. First, Father asserts that the issues Mother now purports to raise in her brief were not presented to the trial court in Mother's Rule 1925(b)

statement, and therefore, they are waived on appeal. Father's Brief at 13-16. Further, Father contends that because the argument section of Mother's brief consists of merely one paragraph which fails to develop any argument and contains no citations to authority or references to the record, Mother's issues are waived on that basis as well. *Id.* at 16-17. Alternatively, Father argues that the trial court committed no error in concluding that Mother's neglect of Child's dental care constituted abuse under the PFA Act. *Id.* at 18-28.

It is well settled that issues not included in the Rule 1925(b) statement are waived. *M.G. v. L.D.*, 155 A.3d 1083, 1092 (Pa. Super. 2017); Pa.R.A.P. 1925(b)(4)(vii). As noted previously, in her Rule 1925(b) statement, Mother alleged that the trial court erred in granting the PFA petition on a basis that was not alleged in the PFA complaint. *See* Mother's Rule 1925(b) Statement, 1/17/23, at 2-3. However, in her appellate brief, Mother raised issues alleging that she did not engage in serious physical neglect as she sought restorative dental treatment but was prevented from achieving this goal due to COVID-19 restrictions and that the trial court erred in finding that multiple dental cavities are sufficient to constitutes abuse or bodily injury under the PFA Act. *See* Mother's Brief at 6. Because the issues Mother presented in her brief were not included in her Rule 1925(b) statement, they were not properly preserved and are waived on appeal. *See M.G.*, 155 A.3d at 1092; Pa.R.A.P.

1925(b)(4)(vii). Accordingly, because Mother waived her issues on appeal, we affirm the order granting the PFA order.[5]

We note that Mother provides some argument in the statement of the case section of her brief. *See* Mother's Brief at 7-18. Presenting argument in this manner violates the Rules of Appellate Procedure. *See* Pa.R.A.P. 2117(b) (providing that "[t]he statement of the case shall not contain any argument."). Further, the portions of argument Mother presents in the statement of the case consist of statements of law, allegations of error, and legal conclusions without citation to supporting legal authority. *See* Mother's Brief at 7-18. In any event, even if Mother's issues were not waived, and we considered Mother's argument that the damage to Child's teeth was insufficient to

_____

[5] Furthermore, we also agree with Father that Mother waived her issues on appeal on a separate basis. As noted, Father asserts that Mother waived her issues on appeal due to her failure to develop an argument. Father's Brief at 16-17. "It is well-established that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal." *C.H.L.*, 214 A.3d at 1276 (citations omitted). The entirety of the argument section from Mother's brief reads as follows:

> [Mother's] choice to pursue restorative specialized dental care from a dental specialist did not constitute "child abuse" or "neglect" under Pennsylvania Law when the COVID-19 worldwide Pandemic caused significant delays in obtaining an appointment with a dental specialist that would accept her dental insurance, was accepting new patients and operating under the Pandemic-related restrictions.

Mother's Brief at 20. This single sentence is insufficient to develop and support an argument for appellate review. Therefore, we conclude that Mother's failure to develop an argument constitutes an additional basis upon which to conclude that she has waived her issues on appeal. *See C.H.L.*, 214 A.3d at 1276.

constitute neglect establishing abuse under the PFA Act, we would conclude that Mother is due no relief. On this record, we agree with the trial court that abuse under the PFA Act was established based on neglect in that Child's teeth were in decay for years with cavities that required the extraction of teeth. Further, Child endured pain because of Mother's failure to obtain dental care, and Mother knew about the condition of Child's teeth for over two years. *See* Trial Ct. Op., 2/10/23, at 7-9. Indeed, were we to conclude that this issue was properly preserved and presented, we would affirm based on the trial court's reasoning.

"In a PFA action, this Court reviews the trial court's legal conclusions for an error of law or an abuse of discretion." *Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021) (citing *Custer v. Cochran*, 933 A.2d 1050, 1053-54 (Pa. Super. 2007) (*en banc*)).

> A trial court does not abuse its discretion for a mere error of judgment; rather, an abuse of discretion occurs where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will. Moreover, on appeal, this Court will defer to the credibility determinations of the trial court as to witnesses who appeared before it. It is well-settled that the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. Finally, we review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court.

*Kaur*, 259 A.3d at 509 (internal citations and quotation marks omitted). "The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of

- 9 -

physical and sexual abuse." ***E.K.***, 237 A.3d at 519 (citation omitted). "In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury. . . ." ***Id.*** (citation omitted). "Past acts are significant in determining the reasonableness of a PFA petitioner's fear." ***Id.*** (citation omitted).

The PFA Act defines "abuse" as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, **including such terms as defined in Chapter 63** (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a) (emphasis added). Chapter 63 defines "child abuse," in relevant part, as follows:

**Child abuse.**—The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

(1) Causing bodily injury to a child through any recent act or failure to act.

\*   \*   \*

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

\*   \*   \*

(7) Causing serious physical neglect of a child.

23 Pa.C.S. § 6303(b.1)(1), (5), (7).  "Serious physical neglect" is defined in

Chapter 63 as:

Any of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning:

(1) A repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities.

(2) The failure to provide a child with adequate essentials of life, including food, shelter or medical care.

23 Pa.C.S. § 6303(a).

Here, the trial court addressed this issue as follows:

To this court's knowledge, the issue of whether serious physical neglect of a child by failure to obtain medical care can form the basis for the entry of a PFA order has not been addressed by an appellate court in this Commonwealth, so our guidance must come from the statute itself.  The PFA Act states that "abuse" is, among other things, "(4) Physically or sexually abusing minor children, **including such terms as defined in Chapter 63** (relating to child protective services)."  Turning then to Chapter 63, we find that the Legislature has defined "child abuse" as "intentionally, knowingly or recklessly doing any of the following . . . (7) causing

- 11 -

serious physical neglect of a child."  Then examining the definition of "serious physical neglect" under the same statute, we find that "serious physical neglect" is defined as "Any of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, **causes bodily injury or impairs a child's health**, development or functioning . . . (2) The failure to provide a child with adequate essentials of life, including food, shelter or medical care."  "Bodily injury," in turn, is defined as "impairment of physical condition or **substantial pain**."

The Superior Court has previously addressed the interplay between the [Child Protective Services Law] CPSL[, 23 Pa.C.S. §§ 6301-6387,] and the PFA Act.  In *Miller*[ *on Behalf of Walker v. Walker*, 665 A.2d 1252 (Pa. Super. 1995)], the defendant argued that section 4 in the definition of "abuse" under the PFA Act only includes "serious physical injury" to a Child.  [*Id.* at 1257.]  The Superior Court disagreed and held that "[t]he inclusion of subsection (4) within the definition of abuse under the Protection from Abuse Act evidences the legislature's intent to make available to victims of child abuse as defined under the [CPSL] the legal remedies of the Protection from Abuse Act."  [*Id.* at 1258.]  Additionally, the Court held that "for a remedy to be available under the Protection from Abuse Act, it is not necessary that the physical harm to the child be as serious as that which is required for a child to be removed from his home and placed in protective custody."  [*Id.*]

The record supports a finding of abuse under these provisions. [Father] testified that when he took Child to the dentist after being granted custody through the temporary PFA Order, [Child] had nine cavities, seven of which need to be extracted.  [Mother's] testimony on the matter was perplexing.  First she said that she had taken Child to the dentist in June of 2021.  Then she said that she could not make appointments with the specialist because their office was closed due to the COVID-19 Pandemic.  [Mother] then offered the testimony of her aunt and [Mother's] Exhibit 4, both of which were contradictory to her own testimony, and actually showed that Child was last seen by her regular dentist in July of 2019 and by the specialist in June of 2020.  [Mother] admitted that she did not seek additional treatment of the cavities up through the date of the hearing.  This means that at the time of the commencement of this action, [Mother] had known about at least four of the cavities for three years and had not sought any treatment of them for at least two years.  [Mother] further testified that she had "a whole medicine cabinet for Children's

Tylenol," that she would use because Child would say that "her mouth was bothering her." [Mother] testified that a teacher also told her that Child's teeth were "bothering her." The specialist's records in [Mother's] Exhibit 4 noted that Child was complaining of pain in her mouth.

Cavities are a typical childhood malady, but nine cavities is an extreme deviation from the norm. Even in the case of one or two cavities, however, it is incumbent upon a child's caregiver to seek appropriate dental treatment. In [Mother's] own words, the cavities were causing Child pain, so much so that she had to have a "whole medicine cabinet for Children's Tylenol," to give Child when she complained about her teeth. This court further found that [Mother's] testimony regarding her attempts at seeking care [were] disingenuous. We therefore found that [Mother's] failure to obtain appropriate dental care for Child constituted serious physical neglect as defined under the CPSL and adopted by the definition of abuse under the PFA Act . . . .

Trial Ct. Op., 2/10/23, at 7-9 (some citations omitted, formatting altered, emphases in original).

Were we to reach this issue, we would discern no abuse of discretion nor error of law in the trial court's conclusions which were supported by the record. *See Kaur*, 259 A.3d at 509. As noted, Child's teeth were in decay for years, she had nine cavities, which required the extraction of seven teeth, endured pain because of Mother's failure to obtain dental care, and that Mother knew about the condition of Child's teeth for over two years. Accordingly, we would agree that Mother's failure to provide this essential care caused injury and impaired Child's health such that it amounted to serious physical neglect and constituted abuse under the PFA Act. *See* 23 Pa.C.S. §§ 6102, 6303(a), and 6303(b.1).

For these reasons, we conclude that Mother failed to properly preserve her issues for appellate review. Accordingly, Mother's issues are waived, and we affirm the PFA order in favor of Child and against Mother.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/25/2023