J-A07031-26 & J-A07032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH L. LOKUTA, JR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH JAY L. LOKUTA, III | : | |
| | : | |
| Appellant | : | No. 719 MDA 2025 |

Appeal from the Order Entered May 22, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2025-05496

| | | |
|---|---|---|
| LISA B. LOKUTA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH JAY L. LOKUTA, III | : | |
| | : | |
| Appellant | : | No. 720 MDA 2025 |

Appeal from the Order Entered May 22, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2025-05494

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                    **FILED: APRIL 17, 2026**

In these appeals, which we consolidate for ease of disposition, Joseph Jay L. Lokuta, III ("Appellant"), appeals from the trial court's May 22, 2025 orders granting relief pursuant to the Protection From Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-6122, to Appellees, Joseph L. Lokuta, Jr. ("Mr. Lokuta"), and his wife, Lisa B. Lokuta ("Mrs. Lokuta").  We affirm.

We glean the following facts from the record, the trial court's opinion, and the briefs of the parties. Mr. Lokuta, the biological father of Appellant, and Mrs. Lokuta, Appellant's step-mother, both filed PFA petitions against Appellant. After temporary PFA orders were issued, the Lokutas' cases were consolidated and a final PFA hearing was held on May 22, 2025. At the hearing, Mr. Lokuta testified that Appellant had "rented one of [Mr. Lokuta's] commercial properties[,]" but when their business relationship ended around December of 2024, Appellant began "slamming" Mr. and Mrs. Lokuta on "social media…." N.T., 5/22/25, at 4. In Appellant's first post on Facebook, he stated, "Pigs get fed. Hogs get slaughtered." *Id.* at 7. In another post, Appellant said, "Joe, do you guys like apples? Well, I'm just getting started. How do you like them apples?" *Id.* at 8. Then, in a third post, Appellant stated:

> Mr. Broke Bucks, I'm recommending hiring 24-hour security, because you're too old to swat a fly. Oh, right, I forgot you care, but I heard you get even -- forget you even [know] how to load a gun.

*Id.* at 9. In a fourth post, Appellant said:

> Okay. This is my last post about these white trash [*sic*], unless I think of something else funnier or Lisa beats up my kid; and Joe, don't worry, I'll be in line at your viewing with people that are there just to make sure you're dead. … [You] will rot in hell. A day after that Lisa will be chasing someone else's money. … Face facts. Make the best of it for POS.

*Id.*

Mr. Lokuta believed each of Appellant's posts were directed towards him. *Id.* at 7, 8, 9, 10, 11. He testified they made him feel "[t]hreatened …

because I know what [Appellant is] capable of doing. To me, I don't think he's in his right mind." *Id.* at 12. Mr. Lokuta said he feared for his safety, as well as for the safety of Mrs. Lokuta. *Id.* at 13. On cross-examination, Mr. Lokuta acknowledged Appellant's Facebook posts were not sent to him directly by Appellant but, instead, Mr. Lokuta had voluntarily accessed Appellant's Facebook page to view those posts. *Id.* at 14.

Mrs. Lokuta testified at the hearing that on December 27, 2024, Appellant was served with a notice of eviction from the commercial business property that she and Mr. Lokuta owned together. *Id.* at 18. She stated she did not have a good relationship with Appellant, and she believed his Facebook posts were directed to her and Mr. Lokuta. *Id.* at 19, 23. Mrs. Lokuta testified Appellant posted an image of her "disguised as a witch" on his Facebook page, which made her "feel threatened…." *Id.* at 21. Mrs. Lokuta also questioned "what was going to happen" after Appellant "recommend[ed they] get 24-hour security." *Id.* She explained Appellant's post about being at Mr. Lokuta's funeral and "want[ing Mr. Lokuta] to rot in hell" was "scary" and "made [her] skin crawl." *Id.* at 22. She not only feared for her husband, but also took Appellant's posts as a threat against her, as well, since she lived in the same home as Mr. Lokuta. *Id.* Overall, Mrs. Lokuta testified she and Mr. Lokuta felt "very threatened" and were in fear of bodily injury, to the point they "put cameras everywhere just to protect [themselves] and [their] property" because they did not feel safe. *Id.* at 24. On cross-examination, Mrs. Lokuta conceded none of the messages in Appellant's Facebook posts were sent to

her directly but, instead, she voluntarily went to his page to view those posts. *Id.* at 26-27. She also confirmed she had not had any communication with Appellant since December of 2024. *Id.* at 27.

Finally, Appellant testified at the PFA hearing. He explained that after he received the notice he was being evicted from Mr. and Mrs. Lokuta's commercial property, he had until February 3, 2025, "to retrieve his belongings in the building[,]" yet each time he tried to do so, the Lokutas had him arrested. *Id.* at 34. He testified his Facebook posts were simply "stating facts" and were not meant to be threatening. *Id.* at 37. For instance, in regard to the post declaring the Lokutas should get 24-hour security, Appellant claimed "[i]t was just a recommendation" and was not intended to mean he was "coming for [them] or anything like that." *Id.* at 38. Pertaining to the post about attending Mr. Lokuta's funeral, Appellant said, "I was just stating that I was going to go to his viewing. I won't go. That wasn't a threat." *Id.* at 43. Appellant also stressed he did not send any messages or posts to the Lokutas, and they were not meant to be "threatening, abusive, or any of that." *Id.* at 50. Instead, Appellant posted publicly on Facebook "so people would know the truth of what these people did to [him]." *Id.*

At the conclusion of the hearing, the court stated it did not find Appellant's testimony credible, as he claimed to have "no animosity towards" the Lokutas, yet the "posts that have been presented and entered into the record [showed he did] have strong negative feelings about them." *Id.* at 60. The court also concluded Appellant wanted the Lokutas to see his Facebook

posts, and Appellant's post stating the Lokutas "should get 24-hour security or a security system … would create a fear in someone." *Id.* at 61. The court found the Lokutas' fear was reasonable considering the circumstances of the case. *Id.* at 60. In the court's Pa.R.A.P. 1925(a) opinion, it further explained the basis for its decision, as follows:

> Both [Mrs. Lokuta] and [Mr. Lokuta] presented credible testimony of the fear of harm that they felt regarding social media posts that Appellant admits to making[,] but denies that the posts were about [Mr. and Mrs. Lokuta]…. The [c]ourt had an opportunity to review the messages, and when taken collectively, the [c]ourt found that the messages were clearly referencing [Mr. and Mrs. Lokuta]…, and the content was very concerning in nature. Specifically concerning to the [c]ourt was a post wherein Appellant advised [the Lokutas] to get a twenty-four (24) hour security surveillance system, which certainly would create a reasonable fear of harm for both [Mr. and Mrs. Lokuta]….

Trial Court Opinion ("TCO"), 7/28/25, at 5. Accordingly, on May 22, 2025, the court entered final PFA orders in each case, protecting Mr. and Mrs. Lokuta for one year.[1]

_____

[1] We recognize the PFA orders have now expired. However,

> [t]his Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court. … [T]his Court has employed exceptions to the mootness doctrine to review issues stemming from expired PFA orders. *Shandra v. Williams*, 819 A.2d 87, 90 (Pa. Super. 2003) ("[PFA] Act [o]rders are usually temporary, and it is seldom that we have the opportunity to review one before it expires.")[, *superseded on other grounds* by statute, 23 Pa.C.S. § 5328, *as*

*(Footnote Continued Next Page)*

Appellant filed timely notices of appeal in each case. He and the court thereafter complied with Pa.R.A.P. 1925. In the identical briefs Appellant filed in both cases, he states the following five issues for our review:

> [I.] Did the trial court abuse its discretion or commit an error of law where it appears from a review of the record that there is insufficient evidence to support the court's findings?
>
> [II.] Did the trial court err in failing to find that the [Lokutas] did not prove, by substantial, competent evidence pursuant to section 6107(a) of the Protection from Abuse Act, the allegation of abuse by a preponderance of the evidence?
>
> [III.] Did the trial court fail to review the evidence in the light most favorable to … Appellant[] and grant … Appellant the benefit of all reasonable inferences, in determining whether the evidence was sufficient to sustain the court's conclusions by a preponderance of the evidence?

---

*stated in* ***C.H.L. v. W.D.L.***, 214 A.3d 1272, 1281 (Pa. Super. 2019)].

***Ferko-Fox v. Fox***, 68 A.3d 917, 920-21 (Pa. Super. 2013) (some citations and quotation marks omitted).

Here, the final PFA orders could be considered in a subsequent PFA proceeding, and will appear in a criminal records check conducted pursuant to 23 Pa.C.S. § 6105(e)(3). Accordingly, Appellant will suffer some detriment due to the entry of the PFA orders, and we will not dismiss his appeals as moot. *See* ***Kardosh v. Kardosh***, No. 2622 EDA 2024, unpublished memorandum at *2 n.3 (Pa. Super. filed May 23, 2025), *appeal denied*, No. 325 MAL 2025 (Pa. Jan. 20, 2026) (declining to dismiss as moot an appeal from an expired PFA order, as the order could be considered in a subsequent PFA or child custody proceeding, and will appear in a criminal records check) (citing ***Spivey v. Benjamin***, No. 1601 MDA 2022, unpublished memorandum at *2 n.4 (Pa. Super. filed July 25, 2023)). ***See also*** Pa.R.A.P. 126(b) (stating that an unpublished, non-precedential memorandum decision of the Superior Court filed after May 1, 2019, may be cited for its persuasive value).

[IV.] Was the trial court's decision in the instant case contrary to law and in error because it failed to find that [PFA] orders are intended to protect individuals from immediate danger?

[V.] Was the PFA court's sentence/order excessive?

Appellant's Brief at 3-4.

Initially, we note Appellant fails to adhere to the Rules of Appellate Procedure, as the Argument portion of his brief is not "divided into as many parts as there are questions to be argued[,]" and he has not included any headings, "in distinctive type or in type distinctively displayed[,]" to indicate what claim he is discussing. Pa.R.A.P. 2119(a). This briefing error is compounded by the fact Appellant raised sixteen claims in his Rule 1925(b) statement, many of which the trial court found to be "entirely too vague to respond to[,]" and/or "full of legal jargon with no substantive claims and supporting facts … regarding why the [c]ourt's May 22, 2025 [o]rder[s are] in error…." TCO at 4. Thus, the court deemed nine of Appellant's sixteen issues waived. *See id.* Three of those issues correspond to Appellant's issues III, IV, and V herein. *See* Concise Statement, 6/30/25, at 2 ¶ 8 (Appellant's stating, in align with his fourth issue herein, "[t]he [c]ourt erred in not finding that [the] PFA orders are intended to protect individuals from immediate danger, the protection cannot come at the expense of a [d]efendant's due process rights"); *id.* at 2 ¶ 9 (Appellant's stating, in align with his third issue, "[w]hen sufficiency of the evidence claims are raised on appeal from a [f]inal [PFA o]rder, the Court reviews the evidence in the light most favorable to the [appellant], and granting the [appellant] the benefit of all reasonable

inference[s], determines whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence"); *id.* at 3 ¶ 12 (Appellant's stating, in align with his fifth issue, that "[c]onsidering the specific[] circumstances of the instant case, [the trial c]ourt's [f]inal PFA [o]rder dated May 22, 2025[,] creates an undue hardship upon [Appellant]").

We agree with the trial court that Appellant has waived his third, fourth, and fifth issues, based on his vague Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(ii) ("The statement shall concisely identify each error that the appellant intends to assert **with sufficient detail to identify the issue** to be raised for the judge.") (emphasis added); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). **See also Commonwealth v. Parrish**, 224 A.3d 682, 701 (Pa. 2020) ("[W]here, as here, appellate counsel has wholly failed in a Rule 1925(b) statement to identify with sufficient detail the issues to be raised on appeal, … those issues are waived."); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a Rule 1925(b) statement will be deemed waived.").

Nevertheless, as we can discern, and meaningfully consider, the arguments Appellant raises in support of his first and second issues, we will address the merits of those claims together. Initially, we recognize:

> "Our standard of review for PFA orders is well settled. 'In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion.'" **Boykai v. Young**, 83 A.3d 1043, 1045 (Pa. Super. 2014) (quoting **Stamus v. Dutcavich**, 938 A.2d 1098, 1100 (Pa. Super. 2007)).

> The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly.

*E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020).

Here, Appellant's first issue challenges the sufficiency of the evidence to sustain the court's final PFA orders.

> When faced with a sufficiency challenge under the PFA Act, we review the evidence in the light most favorable to the petitioner and, granting [him or] her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.[2] Furthermore, we must defer to the credibility determinations of the trial court. Finally, we note that a PFA petitioner is not required to file a police report, nor is it necessary for [him or] her to introduce medical evidence of an injury. The petitioner's testimony is sufficient if it is believed by the trial court.

*Custer*, 933 A.2d at 1058 (citations omitted). We also note that, under the PFA Act, "abuse" is defined as, *inter alia*, "[k]nowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury." 23 Pa.C.S. § 6102(a)(5).

---

[2] As this quote makes clear, Appellant's third issue (claiming the court "fail[ed] to review the evidence in the light most favorable to … Appellant[] and grant … Appellant the benefit of all reasonable inferences, in determining whether the evidence was sufficient[,]" Appellant's Brief at 3) would be meritless on its face — even if not waived — as "the legal standard is the exact opposite of what [Appellant] purports" it to be. TCO at 3 n.3 (citing *Custer v. Cochran*, 933 A.2d 1050, 1058 (Pa. Super. 2007)).

In the instant cases, Appellant contends abuse was not proven to support the court's issuance of final PFA orders. He stresses both Mr. and Mrs. Lokuta voluntarily accessed his Facebook posts, and he claims his words in those posts were not sufficient to "constitute abuse that would require the final order[s]" entered by the court. Appellant's Brief at 14. According to Appellant, he merely "posted innocuous messages on his public Facebook account, without any direct telephone calls, letters, texts, e-mails[, or] any other communication" to the Lokutas. *Id.* at 17. He further contends the Lokutas were never "harmed or threatened" by him, and "there was no allegation of any injury of a serious nature" to either Mr. or Mrs. Lokuta. *Id.* Moreover, Appellant observes there was "no evidence that [he] had previously engage[d] in past abuse of the [Lokutas] or anyone else." *Id.* at 14. He insists the lack of prior abuse "is not only relevant, but is crucial for the trial court's determination." *Id.* (citing ***Buchhalter v. Buchhalter***, 959 A.2d 1260 (Pa. Super. 2008), and ***Raker v. Raker***, 847 A.2d 720 (Pa. Super. 2004)). Appellant also maintains the court erred by not finding his "direct and lengthy testimony at the PFA [h]earing" to be credible, especially his testimony that he "was evicted from his business location by the [Lokutas]" and they then "prevented [him] … from retrieving his personal property…." *Id.* at 15. Appellant contends the court "ignored" that the PFA petitions were filed after these incidents. *Id.* Accordingly, Appellant concludes the trial court abused its discretion and committed an error of law in granting the final PFA orders protecting the Lokutas.

We disagree.  Viewing the evidence in the light most favorable to Mr. and Mrs. Lokuta, it demonstrates Appellant repeatedly committed acts — namely posting threatening statements on Facebook — under circumstances which would place them in reasonable fear of bodily injury.  The fact the statements were not sent directly to the Lokutas, but were posted publicly on Facebook, does not diminish their threatening nature.  Appellant admitted he put the Lokutas names directly in the posts because it was "who [he was] talking about."  N.T. at 48.  Appellant also conceded he was aware the posts were public and anyone could view them.  *Id.* at 49.  This testimony supports the trial court's determination that Appellant wanted the Lokutas to see his posts.  *Id.* at 61.  Moreover, contrary to Appellant's arguments, his posts were not "innocuous" and non-threatening.  Instead, we discern no abuse of discretion in the court's conclusion that the posts, "when taken collectively," had content which was "very concerning in nature."  TCO at 5.  Namely, we agree with the court that Appellant's post suggesting the Lokutas "get a twenty-four (24) hour security surveillance system, … certainly would create a reasonable fear of harm" for them.  *Id.*  This is especially true where Appellant also posted about attending Mr. Lokuta's funeral.

Moreover, the fact Appellant had not previously abused the Lokutas was not "crucial" to the court's decision, as Appellant maintains.  In the cases he cites in support, *i.e.*, **Buchhalter** and **Raker**, we concluded that evidence of past abuse was **relevant** to the court's assessment of whether the petitioner was in reasonable fear of imminent bodily injury.  **See Buchhalter**, 959 A.2d

at 1264; ***Raker***, 847 A.2d at 726. However, neither case held that prior acts of abuse are a ***necessary requirement*** — or even an extremely compelling factor — in the court's determination of whether the defendant committed abuse of the petitioner as defined by the Act.

Finally, Appellant's argument the court should have believed his testimony over that of the Lokutas is unconvincing. As set forth above, this Court is obligated to defer to the trial court's credibility determinations. ***Custer***, ***supra***. Instantly, the court stated it "found the testimony of [the Lokutas] to be more credible than that of Appellant." TCO at 5. It explained at the hearing it disbelieved Appellant's testimony because he claimed he had no animosity towards the Lokutas, but that assertion was clearly belied by his Facebook posts. N.T. at 60. Appellant has provided no legitimate reason to reject the court's credibility determination.

In sum, we discern no abuse of discretion or error of law in the court's determination that Appellant's multiple Facebook posts directed at the Lokutas were threatening in nature, and placed Mr. and Mrs. Lokuta in reasonable fear of bodily injury. Thus, the entry of final PFA orders in both cases was supported by sufficient evidence.

Orders affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/17/2026