J-S37003-22

2022 PA Super 208

IN THE INTEREST OF: K.L., A MINOR  :   IN THE SUPERIOR COURT OF
                                         :               PENNSYLVANIA
                                         :

APPEAL OF: L.B. A/K/A T.B.        :

                                         :

                                         :

                                       :

                                       :

                                       :     No. 1552 EDA 2022

Appeal from the Order Entered May 20, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000839-2015

BEFORE: BOWES, J., LAZARUS, J., and OLSON, J.

OPINION BY BOWES, J.:                    **FILED DECECMBER 6, 2022**

L.B. a/k/a T.B. ("Appellant") appeals from the May 20, 2022 order directing him to stay away from K.L., born March 2010. The order was entered on K.L.'s dependency docket. We vacate the order and remand for proceedings consistent with this opinion.

The instant matter arises in the context of K.L.'s dependency and adoption proceedings, which both this Court and our Supreme Court have detailed extensively. *See Int. of K.N.L.*, 264 A.3d 401 (Pa.Super. 2021) (non-precedential decision) ("***K.N.L. I***"), *rev'd in part,* No. 1 EAP 2022, 2022 WL 10719028 (Pa. Oct. 19, 2022) ("***K.N.L. II***"). Briefly, K.L.'s parents relinquished her as a newborn to the care of R.B.P., who is Appellant's mother. During the next five years, Appellant and R.B.P. lived together and cared for K.L. In 2015, the Philadelphia Department of Human Services ("DHS")

received a child protective services report raising abuse allegations against R.B.P. and, later, Appellant. In the course of the investigation, DHS removed K.L. from R.B.P.'s home.[1] K.L. was adjudicated dependent, committed to the care of DHS, and placed in a foster home.

Following the involuntary termination of the parental rights of K.L.'s biological parents, K.L.'s foster parent filed a report of intention to adopt her. The report was withdrawn, however, once K.L.'s maternal aunt filed a motion to intervene and a petition to adopt. Thereafter, Appellant also sought to intervene on the adoption docket, claiming *in loco parentis* status. DHS and the child advocate challenged Appellant's standing. On January 26, 2021, the adoption court held a hearing and entered an order denying Appellant's petition to intervene based on a lack of standing. After Appellant was excused from the hearing, the child advocate alleged that Appellant had been appearing at K.L.'s daycare and school and requested protection for the child. Accordingly, the adoption court added to the order a provision directing Appellant to stay away from K.L.[2]

---

[1] The abuse allegations were deemed unfounded but the investigation revealed "significant, aggressive and sexualized behavioral health issues which, in the [adoption] court's view, R.B.P. was not adequately addressing." **K.N.L.**, No. 1 EAP 2022, 2022 WL 10719028, at *2 (Pa. Oct. 19, 2022) ("**K.N.L. II**"). The adoption court "suspected Appellant . . . was responsible for 'whatever happened[.]'" **Id**.

[2] The adoption court simultaneously issued a separate stay-away order, also on the adoption docket, entitled "Dependency Court Protective Order." **Int. of K.N.L.**, 264 A.3d 401 (Pa.Super. 2021) (non-precedential decision at 4)
*(Footnote Continued Next Page)*

The stay-away provision entered on the adoption docket is not currently before us. However, we briefly summarize the history of Appellant's appeal from the January 26, 2021 order, which included review of the validity of that stay-away provision, as it is relevant to our analysis of the case at bar. Upon review of the adoption court's January 26, 2021 order, this Court affirmed the denial of Appellant's motion to intervene in the adoption matter for lack of standing but reversed the stay-away portion of that order. We provided the following explanation and directive regarding the stay-away provision:

> Appellant was not afforded procedural due process, as he lacked notice and an opportunity to be heard. We find the federal cases cited in the [adoption] court opinion, regarding temporary restraining orders, inapposite to this adoption case. The [adoption] court, however well-intentioned, did not provide Appellant any notice or an opportunity to be heard on the Child Advocate's allegations that Appellant had engaged in actions upon which the [adoption] court decided to issue the stay away provision/order. Without hearing from Appellant and creating a record from which this Court may conduct meaningful appellate review, we must agree that the [adoption] court deprived Appellant of due process when it included the stay away provision in the January 26, 2021 Order Denying Petition/Motion. While we recognize that [K.L.'s] best interests are at issue, upon remand, if any party has a basis for seeking such an order in this matter, it will have to be pursued in a manner to adhere to the parties' guarantees to due process and with the creation of an appellate record from which this Court may conduct our review. Thus, we vacate and remand the stay away portion of the January 26, 2021 Order Denying Petition/Motion.

("**K.N.L. I**"), *rev'd on other grounds*, **K.N.L. II**. This Court subsequently determined that the standalone order was a nullity as it was duplicative of the stay-away provision in the January 26, 2021 order. **Id**. (non-precedential decision at 43 n.11). Notably, that standalone order had substantially similar language to the dependency order entered in the present case by the juvenile court and which is the subject of the instant appeal.

***K.N.L. I***, ***supra*** (non-precedential decision at 42) (footnote omitted).

Appellant petitioned our Supreme Court for review of this Court's decision to affirm the adoption court's denial of his petition to intervene in the adoption proceedings. Our Supreme Court granted *allocatur* solely as to that issue. After concluding that the adoption court applied the wrong analysis, it remanded for a hearing *de novo* on Appellant's standing to intervene on the adoption docket. ***See K.N.L., II***, ***supra***.

In the meantime, following this Court's decision but while the appeal regarding standing in the adoption proceedings was still pending in our Supreme Court, the juvenile court conducted a permanency review hearing on K.L.'s dependency docket. The events that unfolded at this hearing form the basis for the instant appeal. Although not a party to the dependency proceedings, Appellant was present at the invitation of the former DHS worker. At the beginning of the hearing, the child advocate indicated her intent to pursue a stay-away order against Appellant. Prior to calling K.L. as a witness in that regard, all individuals were sequestered, including Appellant. Appellant objected, as follows:

| [Appellant]: | --but I have a right to cross-examine. |
|---|---|
| The Court: | -- sir? Sir? I'm sorry. I am the Judge in this courtroom. And I'm telling you, you have to vacate the courtroom at this juncture. |
| [Appellant]: | Wow. |
| The Court: | If you cannot follow my directions then we will do something else. So I'm going to tell you one |

> more time. At this juncture it's time to vacate the courtroom.
> No words. Vacate the courtroom. And not in this lobby. You sit in the sitting room. . . .

N.T., 5/20/22, at 12.

Following K.L.'s testimony in support of the stay-away order request, the juvenile court issued a stay-away order against Appellant. Appellant was not provided the opportunity to present evidence or speak on his own behalf. Instead, the court called Appellant into the courtroom, advised him of the order, and noted that if he violates the order, he "may be placed under arrest." *Id*. at 25. The order itself provided that a "violation of this order may result in court action including a fine, imprisonment, or prosecution[.]" Dependency Court Protective Order, 5/20/22. An exchange occurred between Appellant and the juvenile court following notice of the stay-away order and the punishment for a violation. Although the contents are not entirely clear given that Appellant and the court were talking over each other, the stenographer captured the exchange as follows:

| [Appellant]: | -- Your Honor? |
|---|---|
| The Court: | Sir? |
| [Appellant]: | Are you going to file – if you're going to put this under investigation – |
| The Court: | Sir? |
| [Appellant]: | -- before you do something like that. |
| The Court: | Sir, there is a current stay away order now. |
| [Appellant]: | I see it. |

The Court:        You're excused.  You're --

[Appellant]:      You know the Court Officer did not –

The Court:        -- you are –

[Appellant]:      -- call me in here one day.

The Court:        -- you are excused.  You are excused.

N.T., 5/20/22, at 25.

This timely appeal followed.[3]   Appellant and the juvenile court have complied with Pa.R.A.P. 1925.  Appellant presents the following issues for our consideration:

> 1) Did the [juvenile] court violate the Appellant's Federal and State Constitutional right to Procedural Due Process by issuing a Stay Away Order against the Appellant without permitting the Appellant to present any evidence or cross-examine any witnesses?
>
> 2) Did the [juvenile] court exhibit substantial bias against the Appellant by a) committing identical reversible errors against the Appellant when issuing subsequent Stay Away Orders against him despite receiving correction from the Superior Court ([***K.N.L. I, supra***]), b) using derogatory language to identify the Appellant and the Appellant's supporters and witnesses, and c) threatening the Appellant with a judicial conclusion of mendacity if Appellant did not use only the legal definitions of common, everyday words?

_____

[3] The juvenile court issued a letter to this Court stating, without elaboration, that it "ha[d] committed a reversible error" and "request[ed] that the case be remanded so that [it] may correct the error and reconsider the order." Juvenile Court Letter, 7/15/22.  In this letter, the court described its order as interlocutory.  This Court issued a rule to show cause order regarding the juvenile court's request for a remand.  Appellant responded, arguing that the order appealed from is not interlocutory and the juvenile court's request should be denied as untimely filed.  ***See*** Appellant's Response to Rule to Show Cause, 7/27/22.  We thereafter discharged the show cause order.

> 3) Did the trial court abuse its discretion by crediting testimony that was vague, uncorroborated, and not subject to any challenge or cross examination to support issuing the Stay Away Order?

Appellant's brief at 5.

We begin with Appellant's first issue regarding whether the juvenile court denied him due process in issuing the instant stay-away order. In determining whether procedural due process violations have occurred, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa.Super. 2017). Due process of law is guaranteed by Article I, § 9 of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution and it protects "life, liberty, and property."[4] *Commonwealth v. Beish*, 207 A.3d 964, 968 (Pa.Super. 2019). "In assessing whether one has been unlawfully deprived of a protected right, a two-part inquiry must be undertaken." *In Int. of A.P.*, 692 A.2d 240, 242 (Pa.Super. 1997). "The threshold inquiry in any due process analysis is whether there exists any identifiable property or liberty interest at issue." *Commonwealth v. Mountain*, 711 A.2d 473, 476 (Pa.Super. 1998) (cleaned up). "Once this has been established, a determination must be made regarding the adequacy of the procedures employed by the state to deprive a person of that right." *In Int. of A.P.*, *supra* at 242.

---

[4] As "the due process provision of the Pennsylvania Constitution does not provide greater protections than its federal counterpart," we address them concomitantly. *Commonwealth v. Louden*, 803 A.2d 1181, 1184 (Pa. 2002).

The juvenile court found that Appellant lacked standing in the dependency proceedings because he was "not the parent, guardian, or caregiver of [K.L.]" Juvenile Court Opinion, 7/27/22, at 5. Based on his lack of standing to participate in the underlying dependency proceedings, the juvenile court explained that it did not believe Appellant had "any protected liberty interest at stake and therefore no process was due prior to the issuance of the stay[-]away order." **Id**.

Likewise, K.L. maintains that Appellant's due process rights were not violated because Appellant lacked standing to participate in the underlying dependency proceedings. **See** K.L.'s brief at 13, 18-20. K.L. relies on this Court's non-precedential decision in **Int. of Z.M.**, 225 A.3d 1183, (Pa.Super. 2019) (non-precedential decision). In that case, a former guardian was present at a dependency hearing when the agency indicated its intent to seek a stay-away order. Due to the former guardian's lack of standing in the dependency proceedings, she was excused from the courtroom before testimony was taken on the underlying dependency matter, as well as on the stay-away order. Since the former guardian did not object to the direction to leave the courtroom for lack of standing, this Court concluded that she had "waived her allegation that the juvenile court violated her due process rights by excusing her from the dependency hearing." **Id**. (non-precedential decision at 6) (citation omitted).

We find the persuasive value of **Int. of Z.M.** lacking. Unlike the former guardian in **Int. of Z.M.**, in the case *sub judice*, Appellant unequivocally

objected to being excluded from the courtroom during K.L.'s testimony regarding the stay-away order. It is also clear from the record that the juvenile court did not provide Appellant the opportunity to argue on his own behalf or present evidence regarding the stay-away order, nor did it give him a meaningful opportunity to object to these threshold rulings that, as discussed *infra*, clearly implicated Appellant's due process rights. Accordingly, we do not find that Appellant has waived his claim.

Moreover, Appellant's standing in the underlying dependency matter is irrelevant to the issuance of the stay-away order. **Accord K.N.L. I**, **supra** (affirming the adoption court's finding that Appellant lacked standing in the adoption proceedings but concluding that the court nonetheless deprived Appellant of due process in entering the stay-away order). Therefore, any purported waiver of a claim to standing in the dependency proceedings is inconsequential to our review of the instant appeal. This Court explicitly directed that if "any party has a basis for seeking [a stay-away] order in this matter, it will have to be pursued in a manner to adhere to the parties' guarantees to due process[.]" **K.N.L. I**, **supra** at 42. That directive was not limited to a stay-away order on the adoption docket.

Stated simply, the juvenile court and K.L. have missed the forest for the trees.[5] It is irrelevant whether the stay-away order was entered on the

---

[5] We observe that the juvenile court has since concluded that it erred by not allowing Appellant the opportunity to be heard. **See** Juvenile Court Opinion, 7/27/22, at 6; **see also** DHS letter in lieu of brief, 10/4/22 (joining the court's request for a remand to provide Appellant the opportunity to be heard).

dependency docket or the adoption docket, or whether Appellant had standing to participate in either of those underlying proceedings. The discrete issue before this Court is whether the juvenile court violated Appellant's due process rights in entering the stay-away order.

The instant stay-away order limits Appellant's movement and provides that a violation may result in Appellant's imprisonment. Unquestionably, the order encroached upon Appellant's recognized liberty interests. *See Beish*, *supra* at 968 ("Freedom from bodily restraint lies at the core of the liberty protected by the Due Process Clause." (cleaned up)). Accordingly, as he was in *K.N.L. I*, *supra*, on the adoption docket, Appellant was entitled to due process, namely, notice and an opportunity to be heard, prior to issuance of the stay-away order on the dependency docket. *See also S.T. v. R.W.*, 192 A.3d 1155, 1161 (Pa.Super. 2018) ("[P]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. Due process is flexible and calls for such procedural protections as the situation demands." (cleaned up)).

In the case *sub judice*, the juvenile court provided Appellant notice of the stay-away order. However, it denied Appellant the opportunity to be heard. As such, we are compelled to vacate the order and remand to the

juvenile court.[6]  Upon remand, we once again advise that if "any party has a basis for seeking [a stay-away] order in this matter, it will have to be pursued in a manner to adhere to the parties' guarantees to due process[, *i.e.*, by providing Appellant notice and the opportunity to be heard, along] with the creation of an appellate record from which this Court may conduct our review." ***K.N.L. I***, ***supra*** (non-precedential decision at 42).

Order vacated.  Case remanded with instructions.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2022

---

[6] In light of this disposition, we do not reach Appellant's remaining issues. Nonetheless, we note with displeasure that Appellant's second issue includes a thinly veiled attempt to relitigate bias claims that had been rejected by this Court in ***K.N.L. I***, ***supra***, in relation to the adoption proceedings.  Even if we were to reach Appellant's new bias claims in relation to the dependency proceedings, we discern no evidence of bias against Appellant by the juvenile court.