J-S41014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: V.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: T.F. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1971 EDA 2025 |

Appeal from the Order Entered May 19, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000740-2022

BEFORE: BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.: **FILED JANUARY 26, 2026**

T.F. ("Maternal Grandmother") appeals from the May 19, 2025 protective order directing her to have no contact with her biological granddaughter, V.J., born in May 2022, or V.J.'s foster parents, M.S. and M.B. (collectively, "Foster Parents"). We vacate the order and remand for further proceedings consistent with this memorandum and our decision in ***Interest of K.L.***, 286 A.3d 1267 (Pa.Super. 2022).

We gather the relevant factual and procedural history of this matter from the certified record. This family and V.J.'s biological mother, E.J. ("Mother"), have a history of involvement with the Philadelphia Department of Human Services ("DHS") due to Mother's long-term struggles with mental

_____

[*] Retired Senior Judge assigned to the Superior Court.

illness.[1]  Approximately twenty years before the instant case arose, Mother's eldest biological son, C.J., born in November 2001, was removed from her care and placed into Maternal Grandmother's custody.  *See* Motion to Intervene, 5/13/24, at Exhibit 9.  It is unclear from the available records whether C.J. was ever returned to Mother's care.  At some point prior to January 2021, Mother gave birth to a second son, J.M.

Between January 2021 and May 2021, DHS received several General Protective Services ("GPS") referrals indicating that Mother was suffering a "mental health crisis."  DHS Dependency Petition, 8/30/22, at ¶ 5(a)-(h).  She began inpatient treatment at Fairmount Behavioral Health Hospital in May 2021.  *Id*. at ¶ 5(i).  As a result of Mother's hospitalization, DHS was granted emergency protective custody of J.M. in May 2021, and he was placed in Maternal Grandmother's care.  In April 2022, J.M. was returned to the custody of his biological father, and his dependency was discharged.[2]  Mother was eventually released from inpatient treatment.

Mother gave birth to V.J. in May 2022.  On August 23, 2022, when V.J. was approximately three months old, DHS received a GPS report that Mother had "locked herself in the bathroom of a CVS pharmacy with [V.J.] for an extended period of time and would not come out."  *Id*. at ¶ 5(n).  Although

_____

[1]  Mother suffers from bipolar disorder, psychosis, schizophrenia, and a cannabis use disorder.  *See* Permanency Review Order, 12/3/24, at 1.

[2]  We discern that Mother's three known children each have different fathers.

eventually persuaded to leave the bathroom, Mother was "catatonic" and non-responsive. *Id*. Consequently, she was involuntarily hospitalized again.

The next day, DHS sought and was granted emergency protective custody of V.J., which was confirmed at a shelter care hearing held two days later. The underlying order provided that Mother would begin supervised visits upon her release. *See* Recommendation for Shelter Care, 8/26/22, at 1-2. Like her siblings, V.J. was initially placed into Maternal Grandmother's care.

On September 2, 2022, Maternal Grandmother sought and obtained a three-year protection from abuse ("PFA") order against Mother on behalf of, among others, herself and V.J., based upon allegations that Mother had verbally threatened Maternal Grandmother with violence. *See* Motion to Intervene, 9/28/22, at Exhibit A. The PFA order awarded Maternal Grandmother "temporary sole legal and physical custody" of V.J. *Id*. at 5.

On September 26, 2022, Maternal Grandmother filed a motion to enjoin visits between Mother and V.J. pursuant to the PFA order. On the following day, the court entered an order that, *inter alia*, directed Maternal Grandmother to file a petition to intervene and denied her request to preclude visitations. The order also advised the litigants as follows: "Child to be moved from Maternal Grandmother's home, if she does not comply with Mother's supervised visitation schedule." Continuance Order, 9/27/22, at 1 (cleaned up).

On September 28, 2022, Maternal Grandmother submitted a motion to intervene. *See generally* Motion to Intervene, 9/28/22, at ¶¶ 1-15.

Contemporaneously, V.J. was removed from Maternal Grandmother's custody and placed into Foster Parents' home. The exact circumstances of his removal are not evident from the record. On October 25, 2022, the juvenile court issued a protective order directing Maternal Grandmother to refrain from any contact with V.J. or Foster Parents. *See* Dependency Court Protective Order, 10/25/22, at 1.

On November 8, 2022, the juvenile court adjudicated V.J. dependent and re-affirmed the protective order. *See* Order of Adjudication and Disposition, 11/8/22, at 2 (directing that the "[s]tay away order against Grandmother stands"). The same day, the court entered a separate order that denied Maternal Grandmother's request to intervene. She did not appeal.

Between November 2022 and May 2024, Maternal Grandmother submitted numerous counseled and *pro se* filings that re-raised her arguments to intervene and separately requested custody of V.J. on various grounds. The juvenile court denied or ignored these various submissions.[3]

_____

[3] Particularly, on November 8, 2022, Maternal Grandmother filed a petition requesting sole physical and legal custody of V.J. On November 21, 2022, she also filed a request for reconsideration of her original motion to intervene. The juvenile court did not expressly rule upon either of these filings. On November 30, 2023, Maternal Grandmother filed a second motion to intervene and a separate custody complaint. The juvenile court did not acknowledge the second intervention motion and, ultimately, dismissed the custody complaint.

On January 8, 2024, Maternal Grandmother filed a third motion requesting intervenor status. On February 13, 2024, she submitted an emergency petition requesting visitation with V.J. upon behalf of herself and five
*(Footnote Continued Next Page)*

On September 3, 2024, Foster Parents submitted a report to the juvenile court detailing concerns about Maternal Grandmother's behavior. ***See*** Resource Family Reporting Form, 9/3/24, at Exhibit 1 (letter attachment). Specifically, this report alleged that she had submitted several unfounded child protective services complaints alleging that V.J. was being sexually abused by Foster Parents. The report also claimed that Maternal Grandmother had surreptitiously obtained Foster Parents' contact information from a third party, which she then utilized to further harass them. ***Id***.

Between September 2024 and May 2025, there was no mention of Maternal Grandmother in the certified record. Neither she nor her attorney were present at any of the permanency review hearings held during this period, nor were they provided with notice of any court filings, including those that advised the litigants of upcoming hearings in the juvenile court.

The next identification of Maternal Grandmother in the record occurred on May 19, 2025, when the juvenile court entered a new, one-year protective order directing that she refrain from contact with V.J. and Foster Parents. ***See*** Dependency Court Protective Order, 5/19/25, at 1. The protective order was entered on the same day the juvenile court held a permanency review hearing. The protective order provided specifically that Maternal Grandmother was required to refrain from "any contact directly or indirectly" with V.J. and Foster

_____

additional family members. On May 13, 2024, Maternal Grandmother filed a fourth motion to intervene. As with her prior filings, the juvenile court did not issue a particular ruling with respect to, or even acknowledge, them.

Parents, "*i.e.*, no telephone contact, no verbal contact, no third[-]party contact, no eye contact, no written con[t]act, and no physical contact[.]" ***Id***. It further provided: "VIOLATION OF THIS ORDER MAY RESULT IN COURT ACTION INCLUDING A FINE, IMPRISONMENT, OR PROSECUTION[.]" ***Id***.

A separate permanency review order, also issued on May 19, 2025, indicated that neither Maternal Grandmother nor her attorney were present at the subject hearing. The docket additionally reflects that neither Maternal Grandmother nor her attorney were given written notice of this filing pursuant to Pa.R.C.P. 236 ("Notice by Prothonotary of Entry of Order of Judgment").

On June 26, 2025, Maternal Grandmother filed *pro se* an emergency motion alleging that the juvenile court had engaged in "fraud." ***See*** Emergency Motion, 6/26/25, at 1-13. Therein, she also asserted a number of constitutional claims, including that the court had violated her right to "family integrity." ***Id***. at 8-9. Maternal Grandmother further averred that the juvenile court violated her due process rights by failing to provide her with an opportunity to meaningfully participate in the proceedings. There is no indication that the court ruled upon, or considered, this motion.

On July 30, 2025, Maternal Grandmother, through counsel, filed a *nunc pro tunc* notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), as to the May 19, 2025 protective order. Although styled as *nunc pro tunc* filings, Maternal Grandmother did not seek leave of court prior to submitting these documents. These filings asserted that Maternal Grandmother was entitled to *nunc pro*

*tunc* relief based upon: (1) the juvenile court's issuance of a protective order without providing her with an opportunity to participate in the proceedings; and (2) the juvenile court's failure to provide her with notice of the filing of its protective order. *See Nunc Pro Tunc* Notice of Appeal, 7/30/25, at ¶¶ 1-3. These claims dovetailed with the errors raised in her concise statement.

On August 18, 2025, DHS filed an application to quash this appeal based upon Maternal Grandmother's allegedly untimely notice of appeal. *See* Application to Quash Appeal, 8/18/25, at ¶¶ 1-7 (citing Pa.R.A.P. 903(a)). Maternal Grandmother filed a response, arguing that her belated filing of the notice of appeal was caused by an "error in the court's administrative process." Answer to Application to Quash, 8/20/25, at 5. On August 21, 2025, this Court entered an order denying DHS's application. The juvenile court subsequently authored a Rule 1925(a)(2)(ii) opinion averring that Maternal Grandmother's appeal was untimely. *See* Juvenile Court Opinion, 9/11/25, at 3 ("[T]his court finds the *nunc pro tunc* notice of appeal to be tardy without a legitimate excuse[.]").

Before turning to the merits of Maternal Grandmother's arguments, we must address whether we have jurisdiction over this appeal. *See M.L.S. v. T.H.-S.*, 195 A.3d 265, 267 (Pa.Super. 2018) (cleaned up). It is axiomatic that this Court lacks jurisdiction over untimely appeals. *Id*. Rule 903(a) requires that appellants must file a notice of appeal within thirty days of the "entry" of the underlying order. *See* Pa.R.A.P. 903(a). We acknowledge that Maternal Grandmother's notice of appeal was not filed until July 30, 2025,

which was seventy-two days after the filing of the protective order. Pursuant to Rule 108(b), however, the date of a civil order's entry is "the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by" Pa.R.Civ.P. 236(b). *See* Pa.R.A.P. 108(b).

In pertinent part, Pa.R.Civ.P. 236 provides as follows:

(a) The prothonotary shall immediately give written notice of the entry of

. . . .

(2) any other order or judgment to each party's attorney of record or, if unrepresented, to each party. The notice shall include a copy of the order or judgment.

(b) The prothonotary shall note in the docket the giving of the notice and, when a judgment by confession is entered, the mailing of the required notice and documents.

Pa.R.Civ.P. 236(a)(2), (b).

As noted above, service upon Maternal Grandmother or her attorney was not noted on the docket for the May 19, 2025 protective order, as required by Pa.R.Civ.P. 236(b). Under these circumstances, the failure of the prothonotary to serve written notice of the order upon Maternal Grandmother constituted a "breakdown" in court operations. *See M.L.S.*, 195 A.3d at 267 (citing *Fischer v. UPMC Northwest*, 34 A.3d 115, 121 (Pa.Super. 2011)). As such, "the [thirty]-day appellate period did not begin to run upon entry" of the protective order. *See Smithson v. Columbia Gas of PA/NiSource*, 264

A.3d 755, 760 (Pa.Super. 2021). Maternal Grandmother's appeal is therefore not untimely.

We now turn to the merits of Maternal Grandmother's appeal.[4],[5] In pertinent part, she argues that the juvenile court violated her procedural due process rights by issuing the instant protective order. *See* Maternal Grandmother's brief at 9-14. In determining whether an appellant's procedural due process rights have been violated, our standard of review is *de novo* and our scope of review is plenary. *See K.L.*, 286 A.3d at 1271

Due process of law is guaranteed by Article I, § 9 of the Pennsylvania Constitution and the Fourteenth Amendment of the U.S. Constitution. *Id*.; *see also* Pa. Const., Art. I, § 9; U.S. Const., 14th Amend. We note that "the

---

[4] Although no party has addressed the finality of the May 19, 2025 protective order, this Court's precedent suggests that a "stay-away" order of this nature is not interlocutory. *See Interest of K.L.*, 286 A.3d 1267, 1270 n.3 (Pa.Super. 2022). We also recount that interlocutory orders granting an injunction are immediately appealable as of right. *See* Pa.R.A.P. 311(a)(4).

[5] We also must acknowledge that Maternal Grandmother has not been awarded standing to participate in these proceedings as a party. Nonetheless, this Court has concluded that a litigant's respective standing in underlying dependency proceedings is "irrelevant" in the context of an appeal from a protective order. *See K.L.*, 286 A.3d at 1272. In *K.L.*, we determined that an individual who was previously denied standing to participate in dependency proceedings was still legally entitled to appeal a "stay-away" order that precluded him from having contact with the subject child. *Id*. Similarly, this Court in *K.L.* concluded that such a litigant does not waive due process claims of this nature merely by virtue of not making a contemporaneous objection. *Id*. (finding waiver inappropriate since the court failed to provide a "meaningful opportunity" for the litigant to make an objection). Thus, we find that Maternal Grandmother's claims are properly before us.

due process provision of the Pennsylvania Constitution does not provide greater protections than its federal counterpart." **K.L.**, 286 A.3d at 1271. Hence, we consider these constitutional provisions to be substantively coextensive for the purposes of this appeal. **Id**.

Generally, "[d]ue process requires that the litigants receive notice of the issues before the court and an opportunity to present their case in relation to those issues." **Brooks-Gall v. Gall**, 840 A.2d 993, 997 (Pa.Super. 2003) (recognizing that dependency proceedings implicate due process concerns). Procedural due process necessitates, "at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. Due process is flexible and calls for such procedural protections as the situation demands." **Id**. (quoting **S.T. v. R.W.**, 192 A.3d 1155, 1161 (Pa.Super. 2018)). Furthermore, due process also mandates the opportunity to present "in-court" evidence and "an opportunity to confront and cross-examine adverse witnesses." **M.O. v. F.W.**, 42 A.3d 1068, 1072 (Pa.Super. 2012).

Assessing whether an individual's procedural due process rights have been violated is a two-part inquiry: "The threshold inquiry in any due process analysis is whether there exists any identifiable property or liberty interest at issue. Once this has been established, a determination must be made regarding the adequacy of the procedures employed by the state to deprive a person of that right." **K.L.**, 286 A.3d at 1271 (cleaned up).

- 10 -

With respect to the first element of this inquiry, this Court has held that a protective order issued in a dependency case implicates a litigant's "recognized liberty interests" where it "limits" her "movement" and "provides that a violation may result in . . . imprisonment." *Id*. at 1272 (citing *Commonwealth v. Beish*, 207 A.3d 964, 968 (Pa.Super. 2019) ("Freedom from bodily restraint lies at the core of the liberty protected by the Due Process Clause.")). The protective order issued with respect to Maternal Grandmother fits squarely within this rubric. Insofar as the juvenile court's protective order restricts Maternal Grandmother's movements and provides that a violation may result in her imprisonment, we readily conclude that she has an identifiable liberty interest at stake. *See K.L.*, 286 A.3d at 1272.

Turning to the second element of our due process analysis, it is equally clear that the juvenile court did not employ adequate procedures with respect to the entry of the protective order against Maternal Grandmother. Specifically, the court failed to provide Maternal Grandmother notice of the hearing regarding the protective order and, concomitantly, denied her the opportunity to be heard. Thus, Maternal Grandmother did not have the opportunity to present evidence, cross-examine adverse witnesses, or advance arguments on her own behalf.

As such, we are compelled to vacate the protective order and remand for further proceedings. Upon remand, we advise that if "any party has a basis for seeking a [protective order] in this matter, it will have to be pursued

in a manner to adhere to the parties' guarantees to due process[.]"[6]  **K.L.**, 286 A.3d at 1272-73.  Our caselaw provides that any person who may be subjected to a protective order is entitled to, at a minimum, notice of the claim and an opportunity to be heard.  **Id**.

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/26/2026

---

[6]  As indicated by our discussion, the circumstances of this case and those in **K.L.** are essentially identical, *i.e.*, a litigant denied standing in a dependency proceeding was subjected to a protective order without due process.  We note that the same jurist presided over both cases.